OPINION
{¶ 1} Defendant-appellant, City of Columbus ("appellant"), appeals from the judgment of the Franklin County Municipal Court denying appellant's motion for summary judgment.[1] *Page 2 
 {¶ 2} This matter arises out of an automobile accident that occurred on July 1, 2006. Plaintiff-appellee, Mykol Walters ("appellee"), did not stop at a posted stop sign at the intersection of Morris Avenue and East 6th Avenue in Columbus, Ohio. As appellee proceeded through the intersection, he struck a car driven by Samantha Robinson. Appellee allegedly sustained injuries as a result of the collision, and filed a complaint against appellant on March 2, 2007. According to the complaint, appellee was "under the belief that there was no stop sign since it was blocked by overhanging tree branches." (Complaint at 1.) Appellee's complaint asserts appellant was negligent in: (1) failing to remove an obstruction from a stop sign and public road; and (2) failing to maintain and repair a public road.
 {¶ 3} On August 23, 2007, appellant moved for summary judgment pursuant to Civ. R. 56, asserting it was immune from liability under the Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744. Alternatively, appellant argued it had neither actual, nor constructive knowledge of an obscured stop sign at the intersection in question. After the matter was briefed and an oral argument was held, the trial court found appellant was not entitled to immunity under R.C. 2744 et seq. The trial court further found genuine issues of material fact existed regarding whether appellant's alleged negligence was a proximate cause of the collision and appellee's injuries. Therefore, the trial court denied appellant's motion for summary judgment.
 {¶ 4} This appeal followed and appellant brings the following assignment of error for our review:
 The trial court erred by misinterpreting and misapplying R.C. 2744 et seq particularly R.C. 2744.01(H) and *Page 3 
R.C. 2744.02(B)(3), when it found that the City of Columbus is not entitled to immunity in this case.
 {¶ 5} This matter was decided in the trial court by summary judgment, which under Civ. R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ. R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 6} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Patsy Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. ShellyCo. (1995), 106 Ohio App.3d 440, 445. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher, supra; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41-42.
 {¶ 7} At issue before us is the Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744. As recently stated by the Supreme Court of Ohio: *Page 4 
 First, we begin with the understanding that political subdivisions are not liable generally for injury or death to persons in connection with a [political subdivision's] performance of a governmental or proprietary function. R.C. 2744.02(A)(1). Second, we consider whether an exception to that general rule of immunity applies. R.C. 2744.02(B). If an exception does apply, we proceed to the third inquiry: whether the township can still establish immunity by demonstrating another statutory defense. R.C. 2744.03. * * *
Howard v. Miami Twp. Fire Division,___ Ohio St.3d___, 2008-Ohio-2792, at ¶ 18.
 {¶ 8} In interpreting statutes, we apply familiar rules. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." Hubbard v. Canton City School Bd.of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 14. "If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." State v. Hairston, 101 Ohio St.3d 308,2004-Ohio-969, at ¶ 13.
 {¶ 9} Applying the foregoing, our analysis begins with R.C. 2744.02(A)(1), which provides, in relevant part, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." As is relevant here, R.C. 2744.02(B)(3) provides:
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 * * * *Page 5 
 (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
 {¶ 10} As defined in R.C. 2744.01(H):
 "Public roads" means "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. "Public roads" does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices.
 {¶ 11} The definition of traffic control devices contained in R.C. 4511.01 includes stop signs like the one at issue here.
 {¶ 12} Thus, the critical inquiry before this court is whether or not the stop sign at issue was mandated by the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). If the stop sign was so mandated, then appellant is not entitled to immunity. If, however, it was not, then statutory immunity applies and appellant has no liability here.
 {¶ 13} The Introduction of the OMUTCD states that the manual's material is organized to differentiate between "Standards that must be satisfied * * * Guidances, that should be followed * * * and Options that may be applicable for the particular circumstances of a situation." Section 2B.05 of the OMUTCD, entitled, "STOP Sign Application" states: *Page 6 
 Guidance:
 STOP signs should be used if engineering judgment indicates that one or more of the following conditions exist:
 A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law;
 B. Street entering a through highway or street (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));
 C. Unsignalized intersections in a signalized area; and/or
 D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.
 {¶ 14} According to appellant, this provision provides merely guidance about when a stop sign is to be used; and, therefore, the stop sign at the Morris Avenue and East 6th Avenue intersection is not a traffic control device mandated by the OMUTCD. In support of this position, appellant submitted the affidavit of Eagan Foster, the Traffic Operations Engineer employed by the Transportation Division of the Public Service Department of the City of Columbus, in which Mr. Foster states: "The installation of the stop sign at the intersection of Morris Avenue and Sixth Avenue was not mandated by the [OMUTCD]." (Affidavit at 2.)
 {¶ 15} In contrast, appellee contends the stop sign in question was mandated by the OMUTCD. In reliance, appellee cites to Section 2B.04, entitled "STOP Sign (R1-1)" and states:
 Standard:
 When a sign is used to indicate that traffic is always required to stop, a STOP (R1-1) sign shall be used. *Page 7 
 {¶ 16} While appellee agrees the original decision to place a stop sign is discretionary, appellee contends that once the decision to place a sign is made, the mandates of the manual must be followed, including section 2B.04, thus making them mandated by the OMUTCD. In support of the proposition that once a traffic control device is placed, a political subdivision is not immune from liability in its failure to maintain it, appellee relies on Franks v. Lopez (1994),69 Ohio St.3d 345. In Franks, a one-vehicle accident occurred in which the driver, Lopez, was injured and her two passengers were killed when Lopez failed to negotiate a curve in the road. The plaintiff filed suit against the township for failure to keep the road "free from nuisance," alleging defective design and construction and lack of signage. TheFranks court found that the township's alleged failure to maintain the signage already in place may constitute an actionable nuisance claim. The Supreme Court of Ohio stated:
 Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so.
 Moreover, it is undisputed that the directional arrow sign did not comply with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways as required by R.C. 4511.11(A). The evidence indicated that in addition to not being reflectorized, the sign was smaller than the recommended size and was not properly placed or checked as required by the manual. While the installation of traffic control devices by a political subdivision may be discretionary *Page 8 
pursuant to the manual, once the decision to install has been made, the implementation of that decision is not immune from liability. Winwood v. Dayton (1988), 37 Ohio St.3d 282, 525 N.E.2d 808.
Id. at 349.
 {¶ 17} However, Franks was decided prior to the amendment of R.C. 2744.01(H) and 2744.02(B)(3), effective April 9, 2003.[2] The amendment to R.C. 2744.02(B)(3) removed the nuisance language, and now provides that political subdivisions are liable for "their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]" Further, R.C. Chapter 2744 now defines "public roads." As noted previously, the definition of "public roads" does not include traffic control devices unless such are mandated by the OMUTCD. For this reason, appellant suggests that if we adopt plaintiff's position, all traffic control devices would be "mandated" by the OMUTCD and the distinction in the statute between those traffic control devices that are mandated and those that are not would be effectively abrogated to the point of rendering the distinction meaningless.
 {¶ 18} Because of the statutory amendments, we do not findLopez instructive to this matter. The Supreme Court of Ohio recently considered R.C. 2744.02 in Howard, supra. In Howard, a township fire department was conducting a training exercise involving real fires deliberately set by fire officials. Water used by the firefighters during the training ran from the burn site down to the road. At the conclusion of the training, fire crews were ordered to visit the burn site periodically to ensure the fire was out and to *Page 9 
apply road salt as needed. At approximately 10 p.m., a 16-year-old boy drove his car at a high rate of speed and entered a curve just past the burn site, whereupon he lost control. The vehicle hit a tree and the boy died instantly.
 {¶ 19} Applying the amended version of R.C. 2744.2(B)(3), the appellate court held the term "obstruction" was to be interpreted broadly as was the term "nuisance" in the prior statute. Thus, the appellate court concluded the term "obstruction" includes anything placed or erected in the roadway that has the potential of interfering with the public's use of the roadway. Essentially, the appellate court imposed the same duty of care on political subdivisions as it did when the statute read "free from nuisance." In reversing, the Supreme Court of Ohio concluded the appellate court ignored the statutory history of R.C. 2744.02. The Supreme Court found the General Assembly purposely replaced the phrase "free from nuisance" in light of judicial decisions interpreting the term "nuisance" broadly. The Supreme Court stated, "[w]e are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." Howard, supra, at ¶ 26. The Supreme Court went on to state:
 Given the General Assembly's prior inclusion of the same language in Am. Sub. H.B. No. 350, our precedent that broadly defines the term "nuisance," and that S.B. 106 also limited the definition of "public roads" from a more expansive reading that included "berms, shoulders, rights-of-way, or traffic control devices" to one that focused solely on the roadway itself, see Howard, 171 Ohio App.3d 184, 2007 Ohio 1508, 870 N.E.2d 197, P 17, we discern a legislative intent to limit political-subdivision liability for roadway injuries and deaths. The General Assembly, in furtherance of its goal, used the word "obstructions" in a deliberate effort to impose a condition more *Page 10 
demanding than a showing of a "nuisance" in order for a plaintiff to establish an exception to immunity.
Id. at ¶ 29.
 {¶ 20} Applying similar reasoning, we note that the General Assembly explicitly excluded traffic control devices from the definition of a "public road" unless the traffic control device was mandated by the OMUTCD. By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of a public road. Yet, such would be the result if appellee's position was accepted. The statute clearly distinguishes between traffic control devices that are, and traffic control devices that are not, mandated by the OMUTCD. In reviewing the OMUTCD with respect to the stop sign at issue, it is evident that its placement at the intersection in question is discretionary and not mandatory. See Section 2B.05 of the OMUTCD.
 {¶ 21} Further, a review of the OMUTCD reveals that there are instances in which traffic control device placement is mandatory. For example, Section 2B.09 discussed several instances in which yield signs "may" be used instead of stop signs. However, that provision proceeds to state that a yield sign "shall be used to assign right-of-way at the entrance to a roundabout intersection." Id. at 2B-11. Regarding "DO NOT ENTER" signs, Section 2B.34 states that such sign "shall be used where traffic is prohibited from entering a restricted roadway." Id. at 2B-34. Section 2B.37 states that except as noted in the "Option," the "ONE WAY" sign "shall be used to indicate streets or roadways upon which vehicular traffic is allowed to travel in one direction only." Id. at 2B-38. Similarly, Section 2C.22 provides that "Low Clearance" signs "shall be used to warn road users of *Page 11 
clearances less than 300 mm (12 in.) above the statutory maximum vehicle height." Id. at 2C-13.
 {¶ 22} In contrast, Section 2B.05 states that stop signs "should" be used if engineering judgment indicates that one or more of the listed conditions exist. Section 2B-04, cited by appellee, states, "when" a sign is used to indicate traffic is required to stop, a "STOP" sign must be used. This provision, however, does not mandate the placement of the stop sign itself, as that is determined by Section 2B.05, which pursuant to its language is not mandatory.
 {¶ 23} In conclusion, we find the stop sign at issue here is not a traffic control device mandated by the OMUTCD, and, therefore, is not included in the definition of "public road" as the term is used in R.C. 2744.02(B)(3). As such, the immunity exception contained in R.C. 2744.02(B)(3) is not applicable, and appellant is entitled to immunity pursuant to R.C. 2744.02(A).
 {¶ 24} For the foregoing reasons, appellant's single assignment of error is sustained. Accordingly, the judgment of the Franklin County Municipal Court is hereby reversed, and this matter is remanded to that court for further proceedings consistent with law and this opinion.
Judgment reversed; cause remanded.
BRYANT and BROWN, JJ., concur.
[1] While generally the denial of a motion for summary judgment is not a final appealable order, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Appellant sought, and was denied, summary judgment on the basis of the Political Subdivision Tort Liability Act codified in R.C. Chapter 2744; therefore, the trial court's denial of summary judgment in this instance constitutes a final appealable order.
[2] R.C. 2744.02(B)(3) as it was in Franks provided that political subdivisions were liable for injury caused "by their failure to keep public roads, highways * * * in repair, and free from nuisance."Lopez, at 347. *Page 1