[Cite as *Bibler v. Stevenson*, 2015-Ohio-3717.]


IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY


GARY L. BIBLER, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO.  5-14-29

    v.

JILL D. STEVENSON, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.


Appeal from Hancock County Common Pleas Court
Trial Court No. 2013 CV 243

Judgment Affirmed

Date of Decision:  September 14, 2015


APPEARANCES:

    *William E. Clark* for Appellants

    *Donald J. Rasmussen* for Appellee, City of Findlay

**ROGERS, P.J.**

{¶1} Plaintiffs-Appellants, Gary Bibler and Yvonne Bibler (collectively "the Biblers"), appeal the judgment of the Court of Common Pleas of Hancock County granting summary judgment in favor of Defendant-Appellee, the City of Findlay ("the City"). On appeal, the Biblers argue that the trial court erred in granting the City's motion for summary judgment because sovereign immunity was not applicable in this case. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} The facts of this case are undisputed. On May 27, 2011, Gary Bibler and Jill Stevenson were involved in a two-vehicle accident. The accident occurred at the corner of Sandusky Street and Wilson Street in Findlay, Ohio. Stevenson failed to stop at a stop sign at the intersection and collided with Bibler who had the right of way. The stop sign controlling the northbound traffic on Wilson Street at the intersection was obscured by tree foliage. Because of this, Stevenson claimed she did not see the stop sign until it was too late.

{¶3} On May 17, 2013, the Biblers filed a complaint against the City and Stevenson. In it, they alleged that both Stevenson and the City were liable for negligence. Specifically, they alleged that Stevenson was negligent for failing to stop at a stop sign, which caused the accident and that the City was negligent for allowing the view of the stop sign to be obstructed. On June 18, 2013, the City filed its answer

denying the Biblers' allegations and pleaded numerous affirmative defenses, including sovereign immunity pursuant to R.C. 2744.01, et seq.

{¶4} On December 6, 2013, the City filed a motion for summary judgment. In the motion, the City argued that it was immune from liability pursuant to R.C. 2744.01, et seq. On December 30, 2013, Stevenson filed her memorandum in opposition. On January 15, 2014, the Biblers filed their memorandum in opposition of the City's motion. In addition to the three memoranda, the trial court also possessed the complete depositions of Stevenson and Officer Kevin Spieker of the Findlay Police Department.

{¶5} On April 8, 2014, the trial court granted the City's motion. It found that "Officer Kevin Spieker of the Findlay Police Department investigated the accident and testified that he felt there was enough of a view obstruction that something should be done about the tree noting that an accident had previously occurred at the intersection on September 13, 2010, less than nine months prior to [this action] * * *." (Docket No. 58, p. 2). However, it found that the City was a political subdivision engaged in a governmental function and that no exception to the statute applied.

{¶6} On April 23, 2014, the Biblers filed a motion for reconsideration of the trial court's decision to grant the City summary judgment. The trial court denied the motion and affirmed its previous decision awarding the City summary judgment on May 14, 2014.

{¶7} After the City was dismissed from the case, the Biblers and Stevenson settled the remaining claims. On September 16, 2014, the trial court rendered a judgment entry dismissing the case.

{¶8} The Biblers filed this timely appeal, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT/APPELLEE, THE CITY OF FINDLAY, ON ITS CLAIM OF GOVERNMENTAL IMMUNITY.**

{¶9} In their sole assignment of error, the Biblers argue that the trial court erred by granting the City's motion for summary judgment. Specifically, they claim that an exception applies to the general rule that political subdivisions enjoy immunity while engaging in either governmental or proprietary functions. We disagree.

*Summary Judgment*

{¶10} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material

fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis, the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶11} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id*. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id*.; Civ.R. 56(E). Here, the facts are undisputed. Rather, the parties disagree on an issue of law.

*Reconciling R.C. 4511.65 & R.C. 2744.02(B)(3)*

{¶12} This court acknowledges that the requirements of R.C. 4511.65 make situations like this case confusing. R.C. 4511.65 reads, in part, "All state routes are hereby designated as through highways, provided that *stop signs * * * shall* be erected at all intersections with such through highways * * *." (Emphasis added.)

{¶13} It is undisputed that East Sandusky Street in Findlay is also State Route 586, which makes East Sandusky Street a through highway. Thus, under R.C. 4511.65, a stop sign or other suitable traffic control device was required to be located at the intersection of East Sandusky Street and Wilson Street.

{¶14} R.C. 2744.02(B)(3) is part of the political subdivision immunity statute and provides that immunity will not apply if the state negligently fails to repair "public roads" or remove "obstructions" from "public roads." The definition of "public roads," stated infra, includes through highways, but not the traffic control devices located at those intersections. *See* R.C. 2744.01(H). Rather, "public roads" only includes those traffic control devices that are *mandated* by the Ohio manual of uniform traffic control devices ("OMUTCD"). *Id.* Under R.C. 2744.02(B)(3), not all stop signs are mandated. Therefore, it is possible to have the same stop sign considered mandatory under R.C. 4511.65, but not considered mandatory under R.C. 2744.02(B)(3). Only one of these statutes involves sovereign immunity, and since that is the issue here, R.C. 2744.02(B)(3) is controlling.

*Political Subdivision Immunity*

{¶15} R.C. Chapter 2744 governs political subdivision tort liability and immunity. *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460, ¶ 44 (3d Dist.). To determine whether a political subdivision is entitled to immunity under R.C. Chapter 2744, a reviewing court must engage in a three-tiered analysis. *Ward v. City of Napoleon,* 3d Dist. Henry No. 7-07-14, 2008-Ohio-4643, ¶ 11, citing *Cramer v. Auglaize*

*Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, ¶ 14. First, the court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or a proprietary function. R.C. 2744.02(A)(1); *Cramer* at ¶ 14. The general rule is that political subdivisions are not liable in damages. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 10, *superseded by statute on other grounds as stated in Roberts v. Switzerland of Ohio Local School Dist.*, 7th Dist. Monroe No. 12MO8, 2014-Ohio-78 ¶ 16. If the entity is a political subdivision entitled to immunity, then the court must determine whether any of the exceptions enumerated in R.C. 2744.02(B) apply. *Id.* at ¶ 12, citing *Cater v. City of Cleveland*, 83 Ohio St.3d 24, 28 (1998), *abrogated on other grounds by M.H. v. City of Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, ¶ 11. If any of the exceptions apply, then the political subdivision can reinstate its immunity by showing that an R.C. 2744.03 defense applies. *Cater* at 28.

{¶16} Here, the Biblers do not dispute that the City is a political subdivision and qualifies for general immunity. Therefore, we find that the city has satisfied the first tier and is entitled to immunity under R.C. 2744.02(A)(1).

{¶17} Moving to the second tier, R.C. 2744.02(B) removes the general statutory presumption of immunity for a political subdivision only under the following express conditions: (1) the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1), (2) the negligent performance of proprietary functions, R.C. 2744.02(B)(2), (3) the negligent failure to keep public roads open and in repair, R.C.

2744.02(B)(3), (4) the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4), and (5) express imposition of liability by statute, R.C. 2744.02(B)(5).

{¶18} Once general immunity has been established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions applies. *Brady*, 2011-Ohio-2460, at ¶ 47, citing *Maggio v. City of Warren*, 11th Dist. Trumbull No. 2006-T-0028, 2006-Ohio-6880, ¶ 38.

{¶19} The Biblers argue that the stop sign involved in the accident falls under the definition of "public roads," which would strip the City of immunity under R.C. 2744.02(B)(3). Thus, the crux of this case is whether the stop sign located at the intersection of Sandusky Street and Wilson Street is included in the definition of "public roads," which requires this court to look at the language of the statute. We are mindful that when "the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation." *State v. Taylor*, 114 Ohio App.3d 416, 422 (2d Dist.1996).

{¶20} "Public Roads" are defined as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' *does not include* berms, shoulders, rights-of-way, or *traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices*." (Emphasis added.) R.C. 2744.01(H). The definition of "traffic control devices" includes stop signs like the

one in this case. *See* R.C. 4511.01(QQ). At the time of the accident, the relevant edition of the OMUTCD was the 2005 edition, second revision.

**{¶21}** The question then becomes what is the meaning of the word "mandated" in reference to the OMUTCD. The Biblers argue that "mandated" means any traffic control device that is approved for use. Specifically, once a stop sign is approved for use, it constitutes a device mandated by the OMUTCD and is considered part of the public roadway. However, the City argues that "mandated" means only traffic control devices that must be erected in a specific location under the OMUTCD.

**{¶22}** If we were to adopt the Biblers' interpretation, then all stop signs would be considered mandated by the OMUTCD, unless the signs did not match the designs as provided in the manual. We do not find this argument persuasive. We note that the General Assembly explicitly excluded "traffic control devices" from the definition of a "public road" unless they were mandated by the OMUTCD. *Walters v. City of Columbus*, 10th Dist. Franklin No. 07AP-917, 2008-Ohio-4258, ¶ 20. "By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of a public road." *Id.* The statute's language is quite clear and unambiguous. It differentiates between traffic control devices that are and are not mandated by the OMUTCD.

> The OMUTCD contains mandatory, advisory, and permissive conditions, differentiated by the use of the terms "shall, should, and may." Standards using the word "shall" are considered mandatory. Standards using the word "should" are considered to be advising, but not mandating, the particular

signage or other device. Standards using the word "may" carry no requirement or recommendation.

*Webb v. Edwards*, 165 Ohio App.3d 158, 2005-Ohio-6379, ¶ 23 (4th Dist.).

**{¶23}** Sections 2B.04-06 of the OMUTCD regulate the use and maintenance of stop signs. Specifically, Section 2B.05, entitled "STOP Sign Applications," states:

Guidance:

STOP signs *should* be used if engineering judgment indicates that one or more of the following conditions exist:

A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law;

B. *Street entering a through highway or street* (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));

C. Unsignalized intersection in a signalized area; and/or

D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.

(Emphasis added.) The use of the word "should" instead of the word "shall" indicates that stop signs like the one at issue here are not mandatory. Rather, they are discretionary. Because the decision to erect the stop sign was discretionary, we find that it was not mandated by the OMUTCD. Thus, the stop sign does not fall under the definition of "public road."

**{¶24}** Although the OMUTCD does not contain mandatory language in regard to the erection of stop signs, it does contain mandatory language regarding stop signs in other aspects. Section 2B.06 of the OMUTCD, entitled STOP Sign Placement, reads,

**Standard:**
**The STOP sign shall be installed on the right side of the approach to which it applies. When the STOP sign is installed at this required location and the sign visibility is restricted, a Stop Ahead sign (see Section 2C.29) shall be installed in advance of the STOP sign.**

**The STOP sign shall be located as close as practical to the intersection it regulates, while optimizing its visibility to the road user it is intended to regulate.**

**STOP signs and YIELD signs shall not be mounted on the same post.**

(Emphasis sic.)

{¶25} The OMUTCD does not suggest that all traffic control devices are discretionary. For example, a YIELD sign is required to be placed at the entrance to every roundabout. *See* OMUTCD Sec. 2B.09.

{¶26} The Biblers also argue that although the decision to erect the stop sign may have been discretionary, once the decision was made, the City had a duty to maintain the sign. In support of this argument, the Biblers cite to *Franks v. Lopez*, 69 Ohio St.3d 345 (1994). In *Franks*, the Supreme Court of Ohio interpreted the former R.C. 2744.02(B)(3), which provided that "political subdivisions are liable for injury caused 'by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and *free from nuisance*.' " (Emphasis added.) *Franks* at 347, quoting former R.C. 2744.02(B)(3). The Court found that the failure to maintain a sign may constitute an actionable nuisance claim. *Id.* at 348. Further, it found that

Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to

-11-

reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so.

*Id.* at 349.

**{¶27}** However, *Franks* was decided prior to the amendments of R.C. 2744.01(H) and 2744.02(B)(3), which became effective in April 2003. The amendments defined "public roads" and removed the nuisance language and replaced it with the current "obstruction" language. The Supreme Court of Ohio has found that this replacement was significant. *See Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792. The Court stated, "We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id.* at ¶ 26.

**{¶28}** Several other appellate courts have declined to follow *Franks* for this reason. *See Darby v. City of Cincinnati*, 1st Dist. Hamilton No. C-130430, 2014-Ohio-2426, ¶ 19; *Rastaedt v. City of Youngstown*, 7th Dist. Mahoning No. 12MA82, 2013-Ohio-750, ¶ 25; *Shope v. City of Portsmouth*, 4th Dist. Scioto No. 11CA3459, 2012-Ohio-1605, ¶ 29; *Hale v. CSX Transp.*, 2nd Dist. Montgomery Nos. 22546, 22547, 22592, 2008-Ohio-5644, ¶ 49; *Walters*, 2008-Ohio-4258 at ¶ 18 (10th District).

**{¶29}** Only the Sixth District has found *Franks* to be relevant to this analysis. *See Butler v. City Comm.*, 6th Dist. Erie No. E-10-026, 2011-Ohio-1143, ¶ 13. However, the Sixth District did not address the 2003 amendment of R.C. 2744.02(B)(3) in its opinion.

*See Darby* at ¶ 18. For this reason, we decline to adopt the Sixth District's view. Rather, we join the numerous other appellate courts that have found *Franks* is no longer applicable to R.C. 2744.02(B)(3).

{¶30} At first glance, it may appear that this court and the other appellate courts are finding that the erection of stop signs is never required. That is certainly not the case. R.C. 4511.65 provides that stop signs must be erected under certain scenarios. This opinion is limited to the narrow question of whether the stop sign in this case is considered a "public road" for the purposes of sovereign immunity, and the answer is no.

{¶31} Accordingly, the Biblers' sole assignment of error is overruled.

{¶32} Having found no error prejudicial to the Biblers in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**


**WILLAMOWSKI, J., Dissents.**

{¶34} I respectfully dissent from the majority opinion and would reverse the trial court's granting of summary judgment. While I agree with the majority that not all traffic control devices are mandated by the OMUTCD, in this case, a traffic control device was mandated at this intersection by statute, which the majority acknowledges. *See* R.C. 4511.65 and ¶ 13. No administrative agency has the authority to pass rules which contradict a statutory mandate. *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio

St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶18. Although the OMUTCD appears to make the location of the traffic control device optional, in this case, at this intersection, the statute says they are mandatory. The City of Findlay had the option of which particular traffic control device to use at this intersection and could have chosen something other than a "Stop" sign, such as a flashing red light, but it did not have an option as to whether a traffic control device was placed at this intersection. To follow the logic of the majority, no specific traffic control device would ever be mandated merely because the OMUTCD uses the word "should" instead of "shall". This despite the fact that R.C. 4511.65 clearly mandates a traffic control device be placed at locations such as the intersection in this case. Once the City of Findlay chose the "Stop" sign, in lieu of any other traffic control device, as the traffic control device to be used at the intersection in question, that "Stop" sign became the mandated traffic control device. That makes it part of the public road.

{¶35} Additionally, even if the placement of the "Stop" sign was not mandated, a "Stop Ahead" sign was mandated if the visibility was restricted. OMUTCD Section 2B.06 and ¶ 25. Since no "Stop Ahead" sign was present and there was a question of fact regarding the visibility of the "Stop" sign, a mandatory traffic control device was missing. Thus, the City may not be immune from liability in this case. A reasonable jury could conclude, viewing the evidence in a light most favorable to the injured party, that the City failed to maintain the public road by keeping the view of the "Stop" sign unobstructed or by failing to place a "Stop Ahead" sign as required by OMUTCD, in

which case, the City of Findlay would not be immune from liability.  Therefore, I would reverse the trial court's grant of summary judgment and remand the matter for trial.

**/jlr**