**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Bibler v. Stevenson,* **Slip Opinion No. 2016-Ohio-8449.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8449

BIBLER ET AL., APPELLANTS, *v.* STEVENSON ET AL.; THE CITY OF FINDLAY, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Bibler v. Stevenson,* Slip Opinion No. 2016-Ohio-8449.]**

*Sovereign immunity—R.C. 2744.02(B)(3)—Exception for negligent failure to keep public roads in repair—Stop sign allegedly obscured by tree foliage—R.C. 2744.01(H)—Definition of "public roads" includes traffic-control devices mandated by Ohio Manual of Uniform Traffic Control Devices—R.C. 4511.65—Mandatory erection of stop signs and other traffic-control devices by local authorities at roads that intersect with through highways— Municipality is not immune—Court of appeals' judgment reversed and cause remanded.*

(No. 2015-1737—Submitted August 31, 2016—Decided December 29, 2016.)

APPEAL from the Court of Appeals for Hancock County,

No. 5-14-29, 2015-Ohio-3717.

_____

PFEIFER, J.

## I. Background

{¶ 1} In May 2011, Jill Stevenson failed to stop at a stop sign at the intersection of Wilson Street and East Sandusky Street in Findlay. She collided with appellant Gary Bibler, who had the right-of-way while traveling on East Sandusky Street, which is a state through highway. Stevenson claims that she did not see the stop sign because it was blocked by tree foliage. An officer with the Findlay Police Department investigated and determined that the sign was significantly obstructed from a distance as a driver approached it.

{¶ 2} Bibler and his wife, Yvonne Bibler, filed a complaint alleging that Stevenson was negligent for failing to stop and that appellee, the city of Findlay, was negligent for failing to ensure that the stop sign was visible. In ruling on Findlay's motion for summary judgment, the trial court concluded that Findlay was entitled to statutory political-subdivision immunity and that the Biblers had not established that an exception to immunity applies. Accordingly, the court dismissed Findlay from the case. Subsequently, the Biblers and Stevenson settled the claims against her.

{¶ 3} The Biblers appealed the grant of summary judgment in favor of Findlay, asserting that Findlay was not immune from liability. The court of appeals disagreed in a split decision, stating the "narrow question" as "whether the stop sign in this case is considered a 'public road' for the purposes of sovereign immunity" and concluding that "the answer is no." 2015-Ohio-3717, 38 N.E.3d 952, ¶ 30 (3d Dist.).

{¶ 4} We accepted the Biblers' discretionary appeal. 144 Ohio St.3d 1504, 2016-Ohio-652, 45 N.E.2d 1049.

2

## II. Analysis

### A. R.C. Chapter 2744 and related definitions

{¶ 5} R.C. Chapter 2744 sets forth the circumstances under which political subdivisions, acting through their employees, are susceptible to suit in tort.

{¶ 6} R.C. 2744.02(B)(3), as relevant to this case, states that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." This is the only statute under which the Biblers assert that Findlay is liable.

{¶ 7} R.C. 4511.01(QQ) defines "[t]raffic control device" as a "sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street * * * by authority of a public agency or official having jurisdiction * * *." Under this provision, a stop sign is a traffic-control device.

{¶ 8} R.C. 2744.01(H) defines "[p]ublic roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." R.C. 2744.01(H) also states that "[p]ublic roads" do not include "berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." This provision clearly demarcates the central issue: the stop sign falls outside the definition of a public road unless it is "mandated by the Ohio manual of uniform traffic control devices" ("OMUTCD").

{¶ 9} R.C. 4511.65(A) states that "stop signs, yield signs, or traffic control signals shall be erected at all intersections with * * * through highways * * * by local authorities as to highways under their jurisdiction * * *." This provision is part of the Revised Code, it is not part of the OMUTCD.

### B. When is a traffic-control device mandated?

{¶ 10} Based on the statutory scheme governing this case, Findlay is immune from liability unless it negligently failed to keep a public road in repair.

R.C. 2744.02(B)(3). No other basis for Findlay's potential liability has been proffered.

{¶ 11} We believe that the court of appeals properly focused on whether the traffic-control device at issue, a stop sign, was mandated. The only aspect of the public road that is in question is the stop sign. Pursuant to R.C. 2744.01(H), a stop sign is excluded from the definition of a public road unless it is mandated by the OMUTCD.

{¶ 12} The court of appeals correctly determined that a stop sign was mandated at the intersection by R.C. 4511.65. East Sandusky Street in Findlay is also State Route 586. Neither party disputes that East Sandusky Street is a state through highway nor that Findlay is responsible for the traffic-control devices used at the intersection of East Sandusky Street and Wilson Street. R.C. 4511.65(C) states that local authorities need not erect a stop sign at a through-highway intersection if the intersection is constructed "to permit traffic to safely enter a through highway without coming to a stop." The intersection in this case has a stop sign on Wilson Street.

{¶ 13} R.C. 4511.11(A) provides:

> Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual of uniform system of traffic control devices, adopted under section 4511.09 of the Revised Code, upon highways under their jurisdiction as are necessary to indicate and to carry out section 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic.

{¶ 14} However essential stop signs are to safety and efficiency, we do not disagree with the statement made by the court of appeals in that case that nothing in the version of the OMUTCD that was in place when the accident occurred specifically and affirmatively indicated that the erection of any stop sign is ever mandatory. *See, e.g.*, OMUTCD Section 2B.05 (2005 Ed., Revision 2) (stating that stop signs "should" be used in certain situations). To be blunt, we would consider this omission indefensible but for R.C. 4511.65(A) and 4511.11(A), which clearly contemplate the mandatory nature of stop signs or other traffic-control devices at intersections involving through highways. ("Through highways" are not defined in the OMUTCD; they are defined in R.C. 4511.65(A).)

{¶ 15} The OMUTCD does not exist in a vacuum. It is a creature of the Revised Code, it is subservient to the Revised Code, and it necessarily incorporates the Revised Code. Its drafters were, of course, aware of the mandatory language of R.C. 4511.65(A) and knew that it relates to the application and placement of stop signs. In fact, Section 2B.05 of the version of the OMUTCD at issue in this case, titled "STOP Sign Applications" (capitalization sic), specifically refers to R.C. 4511.65 and also refers to an appendix to the OMUTCD that contains the full text of that statute. That the relevant version of the OMUTCD did not explicitly state that the placement of stop signs at intersections involving through highways is mandated does not cause R.C. 4511.65 to disappear or somehow become other than mandatory. (Although we focus on "stop signs" because a stop sign is the key factor in this case, R.C. 4511.65(A) refers to "stop signs, yield signs, [and] traffic control signals.")

{¶ 16} The OMUTCD cannot override the clear mandates of a provision of the Revised Code. Instead, its drafters are authorized and obligated to carry out the requirements of "section 4511.01 to 4511.76 and 4511.99 of the Revised Code." R.C. 4511.11(A). One of the requirements of R.C. 4511.01 through 4511.76 is the requirement in R.C. 4511.65(A) for the mandatory erection of stop signs (or some

other traffic-control device) at intersections involving through highways, subject to certain limited exceptions that are not applicable here.

**{¶ 17}** That the version of the OMUTCD at issue in this case mistakenly, inadvertently, or intentionally did not precisely align with the language of R.C. 4511.65 when discussing the application and placement of stop signs does not mean that the stop sign in question was not mandated. Clearly it was. R.C. 4511.65(A). Because the stop sign was mandated, it is not excluded from the definition of a public road with respect to R.C. 2744.02(B)(3).

**{¶ 18}** The OMUTCD is simply the format by which authorities in political subdivisions are made aware of how to comply with statutes, it does not undermine the underlying empowering statutes. How could it? Its drafters have only the authority that was delegated to them, which is to carry out the requirements of R.C. 4511.65 along with many other statutory provisions.

### C. Summary judgment

**{¶ 19}** This case was decided on a motion for summary judgment.

> Summary judgment may be granted when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

*M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

**{¶ 20}** Viewing the evidence most strongly in favor of the Biblers in light of the legal principles applicable to this case, it is apparent that Findlay has not established that it is entitled to judgment as a matter of law regarding its immunity and that reasonable minds could not come to the singular conclusion that Findlay is not liable. The stop sign in this case falls within the definition of a public road, and the accident allegedly occurred because the stop sign was not in repair and was obstructed. Accordingly, we conclude that Findlay is not immune pursuant to R.C. 2744.02(B)(3) and is potentially amenable to liability.

### III. Conclusion

**{¶ 21}** We conclude that Findlay is not immune. We express no opinion about whether Findlay is liable.

**{¶ 22}** We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

LANZINGER, J., dissents, with an opinion joined by KENNEDY and FRENCH, JJ.

_____

**LANZINGER, J., dissenting.**

**{¶ 23}** This case presents a concrete example of how statutory immunity functions in Ohio. Appellants, Gary and Yvonne Bibler, ask us to read R.C. Chapter 4511, which establishes traffic laws related to the operation of motor vehicles, and R.C. Chapter 2744, which sets forth the tort liability of political subdivisions, as an interrelated body of law. The lead opinion adopts this position. But the scope of a political subdivision's statutory duties is separate from and independent of its tort liability.

**{¶ 24}** The default position in R.C. Chapter 2744 is that political subdivisions are immune from liability and that they are liable only when the circumstances fall under one of the exceptions enumerated in that chapter of the Revised Code. In previously considering R.C. 2744.02(B)(3), we have recognized that the General Assembly's intent in amending the statute "was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26. We must accordingly apply the exceptions to statutory immunity that the General Assembly has specified in R.C. 2744.02(B) strictly as written.

**{¶ 25}** R.C. 2744.02(B)(3), subject to a limited exception that is inapplicable here, provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.01(H) specifies that " '[p]ublic roads' does not include berms, shoulders, rights-of-way, or *traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices*." (Emphasis added.) Thus, *mandatory* traffic-control devices that are negligently maintained may remove a political subdivision's immunity and cause it to be subject to liability only when the terms of R.C. 2744.01(H) are met.

**{¶ 26}** In the version of the Ohio Manual of Uniform Traffic Control Devices ("the Manual") effective at the time of the accident in this case, Section 2B.05 provided:

> *STOP signs should be used if* engineering judgment indicates
> that one or more of the following conditions exist:

> A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law;
>
> B. Street entering a through highway or street (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));
>
> C. Unsignalized intersection in a signalized area; and/or
>
> D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.

(Capitalization sic; emphasis added.) This is not mandatory language. Unlike other portions of the Manual that use the word "shall," this section uses the permissive, nonmandatory "should" for the instruction on the installation of stop signs as presented by this case's factual scenario. The Manual does not mandate the use of a stop sign in this situation. Thus, as an unmandated traffic-control device, a stop sign is not within R.C. 2744.01(H)'s definition of a public road. There accordingly is no exception to immunity under R.C. 2744.02(B)(3), and the city of Findlay is not liable.

{¶ 27} The lead opinion concludes that traffic-control devices required by R.C. 4511.65(A) are not excluded from the definition of a public road under R.C. 2744.01(H). Lead opinion at ¶ 11. But R.C. 2744.01(H) incorporates only the Manual into its definition of public roads. It does not incorporate R.C. 4511.65.[1] Therefore, regardless of whether the lead opinion is correct that R.C. 4511.65(A)

---

[1] While the duties of appellee, the city of Findlay, under R.C. 4511.65 should not be relevant to the immunity analysis, the city argues that "R.C. 4511.65 does not mandate the installation or maintenance of traffic control devices" but instead "provides the manner in which a state route becomes designated as a through highway." The city also notes that R.C. 4511.65(A) allows the director of the Ohio Department of Transportation to omit stop signs on roadways intersecting with through highways under the director's jurisdiction when "circumstances warrant" and argues that this provision means that under R.C. 4511.65, a stop sign can never be considered to be "mandated."

mandated that the city erect a stop sign at the intersection at issue here, the existence of that statutory duty cannot trigger tort liability. Indeed, R.C. 2744.02(B)(5) specifies that "[c]ivil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision * * *." For liability to exist, the exception to immunity must be enunciated in R.C. Chapter 2744. The General Assembly has not done so in this regard.

{¶ 28} While some may argue that it is counterintuitive for one section of the Revised Code to impose a mandatory duty upon a political subdivision while another section appears to allow the political subdivision to fail in that duty with impunity, this is the choice the General Assembly has made. Because the stop sign here is excluded from R.C. 2744.01(H)'s definition of public roads, R.C. 2744.02(B)(3) does not apply.

{¶ 29} I respectfully dissent from the court's decision and would affirm the judgment of the Third District Court of Appeals.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

————————————

Drake, Phillips, Kuenzli & Clark, William E. Clark, and Zachary J. Barger, for appellants.

Donald Rasmussen, Findlay Law Director; and Allain Legal, Ltd., Eric M. Allain, and William F. Schmitz, for appellee.

————————————