[Cite as *Browning v. Fostoria*, 2010-Ohio-2163.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

ROXANN BROWNING,            CASE NO. 13-09-28

    PLAINTIFF-APPELLANT,

v.

CITY OF FOSTORIA, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 08-CV-0463**

**Judgment Affirmed**

**Date of Decision:  May 17, 2010**

APPEARANCES:

    *Charles R. Hall, Jr.,* **Appellant**

    *Frank H. Scialdone,* **for Appellee**

**Rogers, J.**

{¶1} Plaintiff-Appellant, Roxann Browning, appeals from the judgment of the Court of Common Pleas of Seneca County granting the City of Fostoria and Officer Lucas Elchert's joint motion for summary judgment. On appeal, Browning argues that the trial court abused its discretion in granting summary judgment where genuine issues of material fact existed as to whether Officer Elchert was responding to an emergency call and whether his actions constituted willful and wanton misconduct such that both the City of Fostoria and Officer Elchert were immune from liability pursuant to R.C. 2744.02 and R.C. 2744.03. Based on the following, we affirm the judgment of the trial court.

{¶2} In September 2008, Browning filed a complaint against the City of Fostoria ("Fostoria") and Officer Elchert claiming damages in excess of $25,000 proximately caused by Officer Elchert's willful and wanton conduct in driving through a red light in response to a dispatch call and colliding with her vehicle and seriously injuring her. In her complaint, Browning alleged that Fostoria negligently trained and supervised Officer Elchert, and that Fostoria was not protected by sovereign immunity, as an exception to immunity applied for injuries sustained due to a police officer's willful and wanton operation of a motor vehicle while responding to an emergency dispatch call.

{¶3} In November 2008, Fostoria and Officer Elchert filed a joint answer to Browning's complaint and included an affirmative defense stating that it was protected by political subdivision sovereign immunity pursuant to R.C. 2744.02, as Officer Elchert acted in good faith while responding to an emergency.

{¶4} In April 2009, Fostoria and Officer Elchert filed a joint motion for summary judgment pursuant to Civ.R. 56, asserting that R.C. 2744 provided immunity for political subdivisions; that one exception to immunity was contained under R.C. 2744.02(B), negligent operation of a motor vehicle; that there was a complete defense to this immunity exception contained in R.C. 2744.02(B)(1)(a) where a police officer operated a motor vehicle in response to an emergency call and the operation of the vehicle was not willful or wanton misconduct; that negligent supervision or training was not an exception to political subdivision immunity; that Officer Elchert acted within the scope of his employment when he operated his motor vehicle in response to an emergency dispatch concerning a fight at a local trailer park; that Officer Elchert did not act willfully or wantonly while driving his vehicle to the scene of the dispatch, as his vehicle's lights and sirens where activated, and he reduced his speed when he approached the intersection and checked traffic in both directions, observing that motorists had stopped to yield the right of way; and, consequently, that there was no genuine issue of material fact as to whether Officer Elchert and Fostoria were immune from liability.

{¶5} Subsequently, Browning filed a response to the motion for summary judgment, stating that genuine issues of material fact existed on the questions of whether Officer Elchert was responding to an emergency call pursuant to R.C. 2744.02(B)(1)(a), as the dispatch records indicated that Officer Elchert was cleared of responding to the dispatch call approximately three minutes prior to the accident, and whether Officer Elchert operated his vehicle in a willful and wanton manner, as he was instructed by another officer to slow down, he admitted to not knowing the guidelines for responding at a high rate of speed, he could not remember his speed before the accident, and he received a write-up as a result of the accident.

{¶6} Furthermore, the deposition of Officer Elchert was filed, wherein he stated that he has been a police officer with Fostoria for a year-and-a-half; that, in March 2008, he had been a police officer with Fostoria for nine months; that he was on probation for the first twelve months of employment and successfully completed the probationary period; that the policies and procedures for Fostoria Police included guidelines about responding to a call for service at a high rate of speed, although he did not know the guidelines verbatim in March 2008; and, that the guidelines provided that, when approaching a red light when responding to a call with lights and sirens, he must slow down or stop to assure the intersection is clear.

{¶7} Officer Elchert further stated that, on March 22, 2008, he received a call for a fight in progress at Nye's Trailer Park ("Nye's"); that he had responded to numerous other calls at Nye's in the past, and he sometimes responded with lights and sirens; that three other officers in two separate vehicles also responded to the call with him; that he turned on his lights and sirens to respond to the call; that he could not recall at what rate of speed he was traveling; that, as he approached an intersection with a red light in his direction, he reduced his speed, but he did not recall by how much; that, as he approached the intersection, he observed traffic had stopped in the immediate area to yield the right of way; that, as he then proceeded through the intersection, he observed Browning's vehicle approaching eastbound; that he was unable to stop in time, and he struck the front passenger side portion of her vehicle; that he could not recall if Browning was operating her vehicle at a high rate of speed as she entered the intersection; that one of the officers traveling behind his vehicle told him to slow down via the radio after the accident; that he did not remember receiving a call prior to the accident indicating that the fight was over at Nye's; that, according to the dispatch activity records, there was a call at 17:59 removing him from responding to Nye's; that he believed he was removed from responding because of the accident; that there was also a dispatch call at 18:02 regarding his accident with Browning; that there was a two-and-a-half minute difference between the dispatch activity removing him from the call to Nye's and the call regarding his accident; that he was disciplined

with a "written verbal write-up" as a result of his failure to ensure the intersection was clear (Elchert dep., pp. 12-13); and, that he did not dispute the write-up.

**{¶8}** Browning's deposition was also filed, wherein she stated that she was not using her cell phone as she was approaching the intersection shortly before the accident; that she did not have a hearing problem; that, as she was approaching the intersection, she did not hear police sirens; that, as she entered the intersection on a green light, she saw a police cruiser, and it struck her vehicle within seconds; that she did see the lights from the police cruiser; that she did not attempt to swerve out of the way or brake to avoid the collision; that she did not know how fast the police cruiser was traveling; that she was driving approximately fifteen or twenty m.p.h. at the time of the accident, and the police cruiser was traveling faster than she was; and, that she had not taken any prescription medications that day or consumed any alcoholic beverages.

**{¶9}** In June 2009, subsequent to a hearing on the matter, the trial court granted Fostoria's and Officer Elchert's joint motion for summary judgment.

**{¶10}** In July 2009, the trial court, upon its own motion, ordered Browning to pay court costs, and Browning subsequently appealed the trial court's grant of summary judgment. However, we subsequently dismissed her appeal due to the lack of a final appealable order.

{¶11} In September 2009, the trial court filed a judgment entry, again granting Fostoria's and Officer Elchert's joint motion for summary judgment. The judgment entry provided as follows:

> **This matter comes before the Court on the motion of defendants for summary judgment pursuant to Civil Rule 56. Plaintiff filed a response to defendants' motion. Defendants filed a reply. A hearing was held on June 23, 2009.**
>
> **The Court has been fully advised, having reviewed the motion, memoranda, pleadings, depositions, exhibit, affidavit and applicable law, and having heard argument of counsel.**
>
> **For the reasons stated on the record, the Court finds that there does not present a triable question of fact regarding the material issues of 1.) the existence of the emergency call at or near the time of this accident and 2.) whether there was willful or wanton misconduct by the police officer. The Court further finds that the Defendants are entitled to summary judgment against Plaintiff on all three claims for relief pursuant to Civil Rule 56 as a matter of law.**
>
> **Judgment is rendered in favor of the Defendants and against the Plaintiff on all three claims presented. Plaintiff's Complaint is dismissed in its entirety.**

(Sep. 2009 Judgment Entry, pp. 1-2).

{¶12} It is from the trial court's September 2009 judgment entry granting summary judgment to Fostoria and Officer Elchert that Browning appeals, presenting the following assignment of error for our review.

> **THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE APPELLEES [SIC] MOTION FOR SUMMARY JUDGMENT.**

{¶13} In her sole assignment of error, Browning argues that the trial court erred in granting summary judgment to Fostoria and Officer Elchert. Specifically, she contends that genuine issues of material fact exist as to whether Officer Elchert was responding to an emergency call and whether his conduct while operating his vehicle was willful and wanton at the time of the accident in order for immunity to apply pursuant to R.C. 2744.02 and R.C. 2744.03. We disagree.

{¶14} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 604-605, 2002-Ohio-3932, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶15} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support her argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; she may not rest on the mere allegations or denials of her pleadings. Id.; Civ.R. 56(E).

{¶16} R.C. 2744 et seq. governs political subdivision tort liability and provides a three-tiered analysis for determining liability. *Ward v. City of Napoleon*, 3d Dist. No. 7-07-14, 2008-Ohio-4643, ¶11, citing *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, ¶14. The first tier, under R.C. 2744.02(A)(1) sets forth the general rule providing immunity to political subdivisions for governmental and proprietary functions.

> **(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.**

{¶17} The second tier provides five exceptions to the general grant of immunity under R.C. 2744.02(A)(1), of which only R.C. 2744.02(B)(1) is applicable in this case.

> **(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:**
>
> **(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.**

{¶18} Finally, the third tier of the analysis provides three defenses to the immunity exception under R.C. 2744.02(B)(1), of which one is at issue here. R.C. 2744.02(B)(1)(a) grants an exception to political subdivisions for liability from injury, death, or loss of personal property caused by the negligent operation of a motor vehicle by an employee of the political subdivision when the employee was "[a] member of a municipal corporation police department or any other police agency [and] was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a). See, also, *Howe v. Henry County Commrs.*, 167 Ohio App.3d 865, 2006-Ohio-3893, ¶10. The burden of proof is on the political subdivision to establish general immunity, and, when established, the burden then

shifts to the plaintiff to demonstrate one of the exceptions to immunity apply. *Maggio v. Warren*, 11th Dist. No. 2006-T-0028, 2006-Ohio-6880, ¶38, citing *Ramey v. Mudd,* 154 Ohio App.3d 582, 2003-Ohio-5170, ¶16.

**{¶19}** Furthermore, R.C. 2744.03 also provides immunity for government employees acting within the scope of their employment, with an exception for wanton conduct.

> **(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:**
>
> **(a)     The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;**
>
> **(b)     The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;**

R.C. 2744.03(A)(6)(a),(b).

**{¶20}** Here, there was no dispute that Officer Elchert was acting within the scope of his employment and was engaged in a governmental or proprietary function at the time of his collision with Browning.  However, the issue is whether Officer Elchert was responding to an emergency call at the time of the collision and whether his conduct in operating his police cruiser was willful and wanton.

**{¶21}** R.C. 2744.01(A) defines an emergency call as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and

personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." The Supreme Court of Ohio has further defined emergency call as one involving a situation in which a response by an officer is required by the officer's professional obligation, with no requirement that the situation be inherently dangerous. See *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, ¶14. See, also, *McGuire v. Lovell* (1998), 128 Ohio App.3d 473, 478.

{¶22} Moreover, willful misconduct "'involves an intent, purpose or design to injure.'" *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 319, 1996-Ohio-137, quoting *McKinney v. Hartz and Restle Realtors, Inc*. (1987), 31 Ohio St.3d 244, 246. Wanton misconduct is "'the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury.'" *Grange Mut. Cas. Co. v. Bockelman*, 3d Dist. No. 7-07-13, 2008-Ohio-1903, ¶17, quoting *McGuire*, 128 Ohio App.3d at 481.

{¶23} Turning to the facts of the case, Officer Elchert stated that he was responding to a dispatch call in regards to a fight at a local trailer park; that he responded with lights and sirens; that, as he approached the red light at the

intersection, he slowed down and checked for traffic; and, that he observed vehicles yielding the right of way, so he proceeded through the intersection.

{¶24} Although Officer Elchert also stated that he was not sure of his rate of speed at the time he entered the intersection, that he could not recall the exact procedure for responding to an emergency call, and that he was disciplined as a result of the accident, there was insufficient evidence to find that Officer Elchert's conduct was willful and wanton. He clearly slowed down and checked the intersection for traffic and warned other motorists by using his overhead lights and sirens. Accordingly, we find this conduct does not rise to the level of an "intent, purpose or design to injure" or "the failure to exercise any care whatsoever," and that immunity exists pursuant to R.C. 2744.02(B)(1)(a) and R.C. 2744.03(A)(6).

{¶25} Additionally, Browning argues that Officer Elchert was not responding to an emergency call at the time of the accident because the dispatch records indicate that he was excused from responding to the call minutes before the accident.

{¶26} Officer Elchert did state that dispatch excused him from responding to the emergency call at Nye's approximately three minutes before dispatch called regarding his accident. However, he also stated that he was removed from the emergency call as a result of the accident, and only a three minute discrepancy between the two dispatch calls supports such a conclusion. Furthermore, Browning presented no evidence other than the time difference between the two

dispatch calls to support her conclusion that Officer Elchert was no longer responding to the emergency call at the time of the accident.

{¶27} Consequently, we find that no genuine issues of material fact exist establishing facts other than that Officer Elchert was responding to an emergency call at the time of the accident and that he was not acting in a willful and wanton manner. We therefore conclude that both Officer Elchert and Fostoria have immunity from tort liability pursuant to R.C. 2744.02 and R.C. 2744.03.

{¶28} Accordingly, we overrule Browning's assignment of error.

{¶29} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jnc**