[Cite as *Slane v. Hilliard*, 2016-Ohio-306.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Crystal R. Slane, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-493 |
| v. | : | (C.P.C. No. 10CV-18165) |
| City of Hilliard et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 28, 2016

*Law Offices of James P. Connors*, and *James P. Connors*, for appellant.

*Mazanec, Raskin & Ryder Co., L.P.A., Michael S. Loughry*, and *Robert H. Stoffers*, for appellee City of Hilliard.

*The Law Offices of Raymond H. Decker*, and *Raymond H. Decker, Jr.,* for appellee Hilliard City School District.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Crystal R. Slane, appeals from a judgment of the Franklin County Court of Common Pleas granting motions for summary judgment filed by defendants-appellees, City of Hilliard and Hilliard City School District. For the reasons that follow, we affirm.

I. Facts and Procedural History

{¶ 2} During the 2007-2008 academic year, appellant was a 16-year-old student at Hilliard Darby High School, which is part of the Hilliard City School District ("district") and within the city of Hilliard ("city"). On October 16, 2007, a vehicle struck appellant after she entered the crosswalk at the intersection of Scioto Darby Road and Leppert Road. Appellant described the incident in her affidavit as follows:

4. I parked in the development and would then walk a short distance to the intersection of Scioto Darby and Leppert Roads in order to cross the street. Traffic was heavy on Scioto Darby Road at that time of the morning. I attended what is known as the "zero" period which started at 6:50 a.m. The "normal" school start period was approximately an hour later. The school zone flashers were not activated or working for the zero period students. Normally the traffic is heavy and cars travel over the speed limit, and there were no lights at the intersection, so the lack of school zone flashers, street lights, and properly working traffic signals made me nervous and scared since the traffic would not slow down without the flashers working and it was hard to know when it was safe to cross the street to get to school.

5. I would cross from the southeast corner of the intersection which faced the northeast corner where a signal box containing pedestrian signals with "WALK" and "DONT WALK" signals was on school property. This pedestrian traffic signal was supposed to light up with a WALK or DON'T WALK signal, sometimes on its own or sometimes in response to pressing a button at the corner. The signals, lights, pole, and box supporting them were located on the school property. From the start of the 2007-2008 school year until the day of my accident, when I was struck by a large SUV while trying to cross in the crosswalk, these pedestrian signals either never worked at all or never worked properly. On several occasions prior to my accident, I tried pressing the button to activate the signals so that I could safely cross the street, but the signals and button never worked so I stopped trying after awhile.

* * *

7. Both the "WALK" and "DONT WALK" pedestrian traffic lights did not work and it was obvious to anyone who was or would be at the intersection. It had been this way for at least several weeks or months, if not longer, and since I drove to school.

* * *

9. On October 16, 2007, I looked up to see the red lights for the traffic to stop in front of me, so I assumed it was safe to cross. I made it a few steps into the crosswalk when all the sudden without warning I was struck by a vehicle and severely injured. I broke my femur bone in my leg and the

surgeon had to insert a rod and pins into my bone, which
required surgery.

{¶ 3} On June 4, 2008, appellant brought a negligence action against the city and
Jesse J. Alfaro, the driver of the vehicle that struck her. The trial court dismissed that
action without prejudice on June 8, 2010. When appellant refiled the action against the
city on December 13, 2010, she added the district as an additional defendant but she did
not refile her complaint against Alfaro.[1]

{¶ 4} On June 29, 2011, the district filed a motion for summary judgment
claiming that it was immune from liability to appellant. On August 25, 2011, the city filed
a motion for summary judgment, also claiming immunity. The trial court initially granted
both motions. However, on June 23, 2014, the trial court vacated both its October 9, 2013
entry granting summary judgment in favor of the district and its October 24, 2013 entry
granting summary judgment in favor of the city. The parties subsequently conducted
additional discovery and submitted supplemental memoranda regarding the pending
motions for summary judgment.

{¶ 5} Appellant presented testimony from other witnesses who claimed that, as
early as the beginning of the school year in August 2007, the "Walk/Don't Walk" signal at
the intersection had either not worked properly or not worked at all. For example,
appellant submitted the affidavit of her classmate, Elizabeth Scotia Knight, who averred,
in relevant part:

> 5. * * * From the start of [the 2007] school year, I noticed that
> the pedestrian light signals were not working. They were dim
> and hard to see. They did not work very well. Sometimes they
> worked, but most often they did not work properly or not
> work at all.
>
> 6. * * * The lights did not "beep" or make any noise even when
> working properly, so pushing the button for a walk signal did
> not help.

{¶ 6} Another Hilliard Darby High School student by the name of Erin M. Ranney
testified that the "Walk/Don't Walk" signal at the intersection did not work when she
pressed the button on the light pole. She estimated that she observed this problem with
the signal around September 2007.

---

[1] Appellant also named American Electric Power Co. as a defendant in the refiled case, but that claim was
later dismissed.

{¶ 7}   Evidence was also produced that in the early 2000s, the city began conducting periodic inspections of traffic and pedestrian signals throughout the city. According to William Walton, Jr., a city maintenance technician, the city inspects the signals at each intersection on a rotating basis at least once per year.

{¶ 8}   Concerning the flashing lights on the school zone signs, appellant deposed Ellette Schamp, who has served as the city's traffic engineer since 1997.  According to Schamp, in 1998 the city installed signs in advance of the intersection of Leppert Road and Scioto Darby Road alerting drivers of the reduced speed limit of 20 miles per hour in a school zone.  Schamp testified that the city activates flashing lights on the signs during school hours.  The posted speed limit on Leppert Road and Scioto Darby Road is 35 miles per hour when school is not in session.  According to Schamp, a timer activates the flashing lights a pre-determined number of minutes before the first tardy bell and then turns the lights off a pre-determined number of minutes after the earliest dismissal bell. Schamp testified that she determines the time of the first tardy bell and earliest dismissal bell by consulting the school district website at the beginning of each school year and confirming that information with a telephone call to the district.  Schamp testified that the city does not adjust the timer to account for pre-school and after-school events.

{¶ 9}   The district's Director of Business, Jeffrey Franklin, was also deposed and testified that the decision when to activate the flashing lights on "school zone" signs is within the discretion of the city.  According to Franklin, the unwritten policy adopted by the city is to activate the flashing lights 20 minutes before the first tardy bell.  Franklin testified that the zero period is not part of the normal school day.

{¶ 10} On April 13, 2015, the trial court ruled that the city and the district were entitled to statutory immunity and granted the motions for summary judgment. Appellant filed a timely notice of appeal to this court on May 13, 2015.

## II. Assignments of Error

{¶ 11} Appellant assigns the following assignments of error for our review:

> 1. The trial court erred by granting defendant City of Hilliard's motion for summary judgment.
>
> 2. The trial court erred by granting defendant Hilliard City School District's motion for summary judgment.

### III. Standard of Review

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Byrd v. Arbors East Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 6, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 13} " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " *Id.* at ¶ 7, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Id.*, citing *Dresher* at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Id.*, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 14} Appellate review of summary judgment is de novo. *Id.* at ¶ 5. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Id.*, citing *Maust v. Bank One Columbus, N.A.,* 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

### IV. Legal Analysis

{¶ 15} The trial court ruled that the city and the district could not be held liable to appellant because there was no dispute that the alleged negligence of the city and the district arose out of the performance or nonperformance of a governmental function and

because the exceptions to immunity set out in R.C. 2744.02(B)(1) through (5) did not apply.

**A. First Assignment of Error**

{¶ 16} In her first assignment of error, appellant contends that the trial court erred when it granted summary judgment in favor of the city. Appellant claims that the city was negligent in failing to repair the malfunctioning "Walk/Don't Walk" signal at the intersection of Scioto Darby Road and Leppert Road, and in failing to illuminate the "school zone" sign for the zero period. Appellant further contends that the negligent acts or omissions of the city were a legal cause of her injuries and that such negligence is actionable under the exceptions to immunity set forth in R.C. 2744.02(B)(3) and (5).

{¶ 17} "R.C. Chapter 2744 addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions." *Gibbs v. Columbus Metro. Housing Auth.*, 10th Dist. No. 11AP-711, 2012-Ohio-2271, ¶ 8, citing *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. The statutory framework requires courts to employ a three-tier analysis to determine whether a political subdivision is entitled to immunity under R.C. 2744.02. *Id.*, citing *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 13; *Lambert* at ¶ 8. "The analysis begins with a general grant of immunity that affords the political subdivision protection from liability 'in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' " *Gibbs* at ¶ 8, quoting R.C. 2744.02(A)(1). "However, the immunity provided by R.C. 2744.02(A)(1) is not absolute, but is subject to various exceptions set forth in R.C. 2744.02(B)." *Smith v. Martin*, 176 Ohio App.3d 567, 2008-Ohio-2978, ¶ 11 (10th Dist.). Consequently, "[t]he second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose a political subdivision to liability." *Gibbs* at ¶ 8, citing *Smith*, 2011-Ohio-4674, at ¶ 14; *Lambert* at ¶ 9. If any of the R.C. 2744.02(B) exceptions apply, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity. *Gibbs* at ¶ 8, citing *Smith*, 2011-Ohio-4674, at ¶ 15; *Lambert* at ¶ 9.

{¶ 18} It is within this statutory framework that we must review the trial court's ruling on immunity.

### 1. City of Hilliard

### a. Flashing lights on "school zone" signs

{¶ 19} R.C. 2744.01(C)(2) defines the term "governmental function" in relevant part, as follows:

> (e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, * * * and public grounds[.]

{¶ 20} R.C. 2744.02(B) sets forth the exceptions to the general rule of immunity in relevant part, as follows:

> Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> * * *
>
> (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair * * *.
>
> (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *.
>
> (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *.

{¶ 21} Appellant first alleges that the city was negligent in the performance of a governmental function by failing to illuminate "school zone" signs for the zero period. The evidence, however, does not permit an inference that the city's negligence, if any, falls within the exceptions set forth in R.C. 2744.02(B)(3).

{¶ 22} Appellant's affidavit provides in relevant part: "I attended what is known as the 'zero' period which started at 6:50 a.m.  The 'normal' school start period was approximately an hour later.  The school zone flashers were not activated or working for the zero period students."  (Slane Affidavit, ¶ 4.)  Based on appellant's affidavit, appellant sustained her injury at or before 6:50 a.m.  Given the undisputed testimony of Schamp and Franklin, appellant sustained her injury prior to the normal school day and prior to the time of day when the city illuminates school zone signs.  Appellant has not cited any statute or administrative regulation that would require the city to activate the flashing lights on school zone signs for pre-school activities.

{¶ 23} Even if we were to accept appellant's argument that the city had a duty to activate the flashing lights for the zero period, the city's failure to do so does not fall within the exception to immunity set forth in R.C. 2744.02(B)(3).  As noted above, R.C. 2744.02(B)(3) states that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep *public roads* in repair." (Emphasis added.)  Pursuant to R.C. 2744.01(H): " '[p]ublic roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision.  *'Public roads' does not include* berms, shoulders, rights-of-way, or *traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices*." (Emphasis added.)

{¶ 24} R.C. 4511.21(B) pertaining to speed limits within school zones provides, in relevant part:

> It is prima-facie lawful * * * for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:
>
> (1)(a) Twenty miles per hour in school zones during school recess and while children are going to or leaving school during the opening or closing hours, and when twenty miles per hour school speed limit signs are erected[. ] * * * *Nothing in this section or in the manual and specifications for a uniform system of traffic control devices shall be construed to require school zones to be indicated by signs equipped with flashing or other lights*, or giving other special notice of the hours in which the school zone speed limit is in effect.

(Emphasis added.)

{¶ 25} Given the plain language of R.C. 4511.21(B) and 2744.02(H), flashing lights on school zone signs are not considered "public roads." For this reason, the exception to political subdivision immunity set forth in R.C. 2744.02(B)(3) does not apply and the city is immune from liability to appellant, as a matter of law, for any negligence with regard to school zone signs.

{¶ 26} Appellant has argued, in the alternative, that the exception to immunity set forth in R.C. 2744.02(B)(5) applies in this case. R.C. 2744.02(B)(5) provides that "[i]n addition to the circumstances described in divisions (B)(1) to (4)[,] * * * a political subdivision is liable for injury * * * when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code." In this regard, we note that R.C. 723.01 imposes a duty on all municipal corporations of "care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks [and] public grounds * * * within the municipal corporation." Appellant argues that this provision expressly imposes liability upon the city for its failure to illuminate the school zone signs for the zero period, and that the exception to immunity under R.C. 2744.02(B)(5) applies. We disagree.

{¶ 27} In 2003, R.C. 723.01 was amended to add the following language: "[t]he liability or immunity from liability of a municipal corporation for injury * * * allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code." Given the language of the amendment, even if we were to find that R.C. 723.01 expressly imposed liability on the city for failing to illuminate school zone signs for the zero period, the city is immune from liability under R.C. 2744.02(B)(3) because the flashing lights on school zone signs are not part of the "public roads."

{¶ 28} Based on the foregoing, we hold that the trial court did not err when it determined that the city was immune from liability to appellant, as a matter of law, from any negligence of its employees with respect to the illumination of school zone signs.

### b. "Walk/Don't Walk" signal

{¶ 29} The trial court concluded that appellant did not produce evidence that the alleged negligence of the city in failing to maintain the "Walk/Don't Walk" signal at the intersection fell within the exception to immunity set forth in R.C. 2744.02(B)(3). The trial court first determined that appellant failed to present evidence that the "Walk/Don't Walk" signal in question was part of the "public roads." In the alternative, the trial court

determined that appellant failed to present evidence that the city had either actual or constructive notice that the "Walk/Don't Walk" signal had malfunctioned.

{¶ 30} Under the Political Subdivision Tort Liability Act, immunity is an affirmative defense. *See, e.g., Jones v. Lucas Metro. Hous. Auth.*, 6th Dist. No. L-96-212 (Aug. 29, 1997); *Haynes v. Franklin*, 135 Ohio App.3d 82 (12th Dist.1999). Accordingly, the burden of proof is on the political subdivision to establish general immunity. *Id. See also Browning v. Fostoria*, 3d Dist. No. 13-09-28, 2010-Ohio-2163, ¶ 18; *Horen v. Bd. of Edn. of Toledo Pub. Schools*, 6th Dist. No. L-09-1143, 2010-Ohio-3631, ¶ 33. The parties agree that the city is entitled to general immunity under to R.C. 2744.02(A) inasmuch as the maintenance and repair of public roads is a governmental function. R.C. 2744.01(C)(2)(e).

{¶ 31} When a political subdivision establishes general immunity, the burden then shifts to the plaintiff to demonstrate that one of the exceptions to immunity applies. *Id. See also Maggio v. Warren*, 11th Dist. No. 2006-T-0028, 2006-Ohio-6880, ¶ 38; *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460, ¶ 24 (3d Dist.). In this instance, appellant has the burden to produce some evidence that the "Walk/Don't Walk" signals in question are part of the "public roads" as that term is defined in R.C. 2744.01(H). *Walters v. Columbus*, 10th Dist. No. 07AP-917, 2008-Ohio-4258, ¶ 20. *See also Darby v. Cincinnati*, 1st Dist. No. C-130430, 2014-Ohio-2426, ¶ 18-19. Under R.C. 2744.01(H), " '[p]ublic roads' does not include * * * traffic control devices *unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices.*" (Emphasis added.)

{¶ 32} R.C. 4511.09 mandated the adoption of a uniform manual by the state department of transportation, and R.C. 4511.11 requires adherence thereto by local authorities. *Royce v. Smith*, 68 Ohio St.2d 106, 109 (1981); *Pierce v. Ohio Dept. of Transp.*, 23 Ohio App.3d 124, 127 (10th Dist.1985). As such, the manual is an appropriate aid to the factfinder in determining the local authority's negligence. *Elabed v. Lemanowicz,* 8th Dist. No. 53128 (Dec. 10, 1987), citing *Royce, Pierce,* and *Bartos v. Diasio*, 8th Dist. No. 49104 (May 16, 1985).

{¶ 33} In *Webb v. Edwards*, 165 Ohio App.3d 158, 2005-Ohio-6379, ¶ 23 (4th Dist.), the Fourth District issued the following commentary regarding the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"):

> The OMUTCD contains mandatory, advisory and permissive conditions, differentiated by the use of the terms "shall," "should" and "may." Standards include the word "shall," and are considered mandatory. Advisory conditions include the word "should" and are considered to be advisable usage, but are not mandatory. Permissive conditions include the word "may" and carry no requirement or recommendation.

*Accord Perkins v. Ohio Dept. of Transp.*, 65 Ohio App.3d 487 (10th Dist.1989); *Leskovac v. Ohio Dept. of Transp.*, 71 Ohio App.3d 22 (10th Dist.1990).

{¶ 34} In ruling on the city's motion for summary judgment, the trial court adopted the reasoning of the trial court in the 2008 case and held as follows:

> This Court previously held that "[t]his case does not involve a failure to keep a public road in repair or to remove obstructions from public roads. Therefore, even if Hilliard negligently maintained or repaired a 'walk/don't walk' signal at the intersection where Plaintiff was injured, that failure does not fall within the limited exception that R.C. 2744.02(B)(3) provides to the general grant of immunity from tort liability that applies to political subdivisions." *See* March 15, 2010 Nunc Pro Tunc Decision and Entry Granting Motion of Defendant City of Hilliard Only for Summary Judgment Filed December 17, 2009. Based upon this persuasive authority, the Court determines that a failure to keep the walk/don't walk signal in repair does not fall within the R.C. 2744.02(B)(3) exception.

(Apr. 13, 2015 Decision and Entry, 5-6.)

{¶ 35} The city contends that appellant "failed to introduce any evidence to the contrary or otherwise present any argument as to why this holding should be reversed." (Appellee City of Hilliard's Brief, 8.) We agree.

{¶ 36} We note that the relevant provisions of the OMUTCD are not part of the trial court record in this case. We further note that appellant has not argued that the manual requires "Walk/Don't Walk" signals at the intersection in question. Consequently, appellant has failed to produce evidence that the OMUTCD mandates "Walk/Don't Walk" signals at the intersection of Scioto Darby Road and Leppert Road. In the absence of such evidence, appellant has no evidentiary support for her claim that the "Walk/Don't Walk" signal at the intersection is part of the "public roads" as that term is defined in R.C. 2744.01(H). *Walters* at ¶ 20 ("By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of

a public road.").  Because there is no evidence that the "Walk/Don't Walk" signal at Scioto Darby Road and Leppert Road is part of the "public roads," the exception to immunity set forth in R.C. 2744.02(B)(3) is inapplicable.  Appellant simply assumes that the "Walk/Don't Walk" signal is part of the "public roads," without providing any argument or evidence to support that assumption.

{¶ 37} Based on the foregoing, we hold that the trial court did not err when it determined that the city was immune from liability to appellant, as a matter of law, from any negligence of its employees with respect to the "Walk/Don't Walk" signal.  In so holding, we recognize that much of the argument in this case revolved around the issue of constructive notice.  However, in the absence of evidence to support a finding that the "Walk/Don't Walk" signal is part of the "public roads," the city's notice of the alleged defect in the "Walk/Don't Walk" signal is irrelevant to the issue of immunity under the exception set forth in R.C. 2744.02(B)(3).  Accordingly, we shall not address the trial court's alternative holding regarding notice.  Appellant's first assignment of error is overruled.

## B. Second Assignment of Error

### 1. Hilliard City School District

{¶ 38} In appellant's second assignment of error, she argues that the trial court erred when it granted summary judgment in favor of the district.  We disagree.

{¶ 39} R.C. 2744.01(C) defines a "governmental function" in relevant part, as follows:

> (2) A "governmental function" includes, but is not limited to, the following:
>
> * * *
>
> (c) The provision of a system of public education;
>
> * * *
>
> (g) The construction, reconstruction, repair, renovation, maintenance, and operation of buildings that are used in connection with the performance of a governmental function * * *;
>
> * * *

> (u) The design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility, school auditorium, or gymnasium * * *.

{¶ 40} R.C. 2744.02(B)(4) provides an exception to immunity as follows: "political subdivisions are liable for injury, death, or loss to person * * * caused by the negligence of their employees and *that occurs within or on the grounds of,* and is due to physical defects within or on the grounds of, *buildings that are used in connection with the performance of a governmental function.*"  (Emphasis added.)  Appellant argues that the district was negligent in failing to illuminate school zone signs for the zero period and in failing to maintain the "Walk/Don't Walk" signal.

{¶ 41} As we have previously noted, R.C. 4511.21(B) specifically states that there is no requirement that school zones be equipped with flashing lights.  Appellant has pointed to no provision in the Revised Code or the manual that would require illumination of school zone signs for pre-school activities such as the zero period.  Moreover, there is no dispute in the testimony that the city assumed the responsibility for the timing of the flashing lights on the school zone sign in question.  Similarly, there is no dispute in the testimony that the city assumed the responsibility for the maintenance and repair of the "Walk/Don't Walk" signal pursuant to its statutory obligation of "care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks [and] public grounds * * * within the municipal corporation."  R.C. 723.01 and 2744.02(B)(3).  Ohio law imposes no such duty on the district.  *See Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989) (The existence of a legal duty in a negligence action is generally a question of law.).

{¶ 42} The trial court determined that, even if the district owed appellant a duty with respect to the school zone sign and the "Walk/Don't Walk" signal, the exception to immunity set forth in R.C. 2744.02(B)(4) did not apply given the undisputed fact that the injury occurred on a public roadway and not within the grounds of buildings the district uses in connection with the performance of its governmental function.  Appellant argues that the portion of public roadway where appellant sustained her injury was located on district grounds because it is located within a designated "school zone."[2]

---

[2] R.C. 4511.21(B)(1)(c) pertaining to "speed limits" provides: "As used in this section, 'school zone' means that portion of a street or highway passing a school fronting upon the street or highway that is encompassed by projecting the school property lines to the fronting street or highway, and also includes that portion of a state highway."

{¶ 43} The undisputed evidence in this case establishes that the vehicle struck appellant while she was walking on a public roadway. Appellant did not sustain her injuries within or on the grounds of a school building, school athletic facility, school auditorium, or gymnasium. Even accepting appellant's claim that both the school zone sign and the "Walk/Don't Walk" signal are located on district property, there is no dispute in the evidence that appellant sustained her injury on a public roadway and not within or on the grounds of a school building, school athletic facility, school auditorium, or gymnasium. Appellant has provided no legal support for her contention that the territorial boundaries of the district include public roadways within the designated school zone.[3] Thus, the trial court did not err when it determined that the exception to immunity set forth in R.C. 2744.02(B)(4) did not apply in this case, as a matter of law.

{¶ 44} Moreover, with respect to the school zone sign, even if we were to conclude that there is a factual issue whether appellant sustained her injury on grounds used by the district in the performance of a governmental function, the physical defect exception to immunity set forth in R.C. 2744.02(B)(4) applies only "if the instrumentality that caused [the] injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility." *Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22, citing *Leasure v. Adena Local School Dist.*, 4th Dist. No. 11CA3249, 2012-Ohio-3071. *See also Yeater v. Bd. of Edn., LaBrae School Dist.,* 11th Dist. No. 2009-T-0107, 2010-Ohio-3684. Appellant has presented no evidence that the flashing lights on the school zone sign were either not operating as intended or that there was a perceivable imperfection with the lights that impaired their utility. Rather, when construed in a light most favorable to appellant, the evidence demonstrates only that the city elected not to activate the lights for the zero period. Accordingly, there is no issue of fact regarding the applicability of the physical defect exception to immunity under R.C. 2744.02(B)(4) as it pertains to the flashing lights on the school zone sign.

{¶ 45} For the foregoing reasons, appellant's second assignment of error is overruled.

---

[3] A "city school district" is defined in R.C. 3311.02 in relevant part as follows: "The territory within the corporate limits of each city, excluding the territory detached therefrom for school purposes and including the territory attached thereto for school purposes."

## V. Conclusion

{¶ 46} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and HORTON, JJ., concur.

_____