[Cite as *McNamara v. Marion Popcorn Festival*, 2012-Ohio-5578.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

MICHAEL MCNAMARA, ET AL.,

    PLAINTIFFS-APPELLANTS,               CASE NO. 9-12-34

    v.

MARION POPCORN FESTIVAL,
INC. ET AL.,                            O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 2010 CV 0688

Judgment Affirmed

Date of Decision: December 3, 2012

APPEARANCES:

    *J. Scott Bowman* for Appellants

    *W. Charles Curley and Mark D. Russell* for Appellees

Case No. 9-12-34

**SHAW, P.J.**

{¶1} Plaintiff-appellants Michael McNamara and Mary Jane McNamara (herein where referred to collectively, "the McNamaras") appeal the May 22, 2012, judgment of the Marion County Common Pleas Court granting summary judgment in favor of the City of Marion ("Marion") on the basis of immunity pursuant to R.C. 2744.02. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On Sunday morning September 7, 2008, Michael McNamara ("Michael") was riding his bicycle to church in Marion.[1] While riding west on E. Church St., nearing the intersection of E. Church St. and S. Seffner Ave., Michael struck an orange crossbeam that was lying on the right side of E. Church St. The beam was approximately 7-8 feet long and 3-4 inches high. The beam had been part of a traffic barricade used to control traffic for a parade during the Marion Popcorn Festival.[2] The beam's legs, two sawhorses, were detached and lying nearby on the curb so that just the crossbeam was in the road, covering approximately one-third of the roadway.

{¶3} According to Michael, he maneuvered his bicycle to the left of the normal bicycle lane to pass two parked cars, then came back to the right side of

[1] Michael was an avid bicycle rider and often rode his bicycle as his primary method of transportation to work and also rode regularly for leisure.
[2] The Marion Popcorn Festival is an annual event that takes place in September the Thursday following Labor Day through the end of Saturday following Labor Day. One of the events that takes place during the Popcorn Festival is a parade. The City of Marion does not organize or operate the parade, but it does assume responsibility for traffic control along and near the parade route.

the roadway and struck the crossbeam. As a result of striking the beam, Michael was "catapulted" off of his bicycle and Michael struck the pavement sustaining injuries. Michael's injuries included multiple broken bones and a head injury that left his memory impaired.[3]

{¶4} On August 13, 2010, Michael and his wife Mary Jane filed a lawsuit against Marion Popcorn Festival, Inc., Marion, John Does 1-4, and John Doe Corporations 1-4 seeking damages for personal injury and loss of consortium, respectively. (Doc. 1).

{¶5} On September 8, 2010, Marion filed its answer asserting, *inter alia*, that Marion was immune pursuant to R.C. 2744.02, and that Michael's negligence contributed to the accident if Marion was not immune and in any way negligent. (Doc. 7).

{¶6} On April 25, 2011, the McNamaras filed a "First Amended Complaint" adding the defendant Medical Mutual of Ohio. (Doc. 19).

{¶7} On April 28, 2011, Marion filed its Answer to the Amended Complaint, again asserting immunity and that Michael's accident was caused by his own contributory negligence. (Doc. 23).

---

[3] The Complaint alleged that McNamara sustained injuries "including, but not limited to: pelvic fractures, hip fractures, clavicle fractures, acute intracranial hemorrhage (traumatic brain injury), left temporal bone fractures, rib fractures, thoracic vertebrae fracture, hearing loss, and vision loss." The Complaint alleged that medical bills amounted to $237,109.73. (Doc. 1).

{¶8} During discovery depositions were taken of Michael, Bill W. Collins, the investigative commander of the Marion City Police, Mark E. Bash, the Marion Street and Sanitation Supervisor at the time of this incident, Robert L. Moats, Jr, the Streets and Sanitation Superintendent for Marion at the time of the incident, and Thomas Robbins, the Marion Safety Director,   (Docs. 35A, 41-44).

{¶9} Subsequently all claims against all defendants were dismissed except the claim against Marion.  *See* (Docs. 30, 33, 38).

{¶10} On December 1, 2011, Marion filed a motion for summary judgment arguing, *inter alia*, that the beam in the road was not an "obstruction" and therefore no exception applied to Marion's immunity, and that if immunity did not apply, the beam was open and obvious.  (Doc. 37).

{¶11} On December 28, 2011, the McNamaras filed a memorandum contra to Marion's motion for summary judgment.  In the memorandum, the McNamaras argued that the beam fit the definition for an obstruction and that there were attendant circumstances which made the beam not open and obvious.  (Doc. 40).

{¶12} On January 3, 2012, the McNamaras filed a supplement to their Memorandum Contra.  (Doc. 45).  The supplemental memorandum contained an affidavit of Russell Fote, a Certified Safety Professional.  (*Id*.)

{¶13} On January 10, 2012, Marion filed a reply memorandum in support of its motion for summary judgment.  (Doc. 46).

{¶14} On May 22, 2012, the court filed a "Decision and Entry on Motion for Summary Judgment" granting Marion's motion. (Doc. 47). In the Entry, the court ultimately held that the beam did not constitute an "obstruction" and therefore no exception to Marion's immunity applied. Having decided that Marion was immune as a political subdivision, the court granted Marion's motion, never reaching the question of whether the beam was open and obvious.

{¶15} It is from this judgment that the McNamaras appeal, asserting the following assignment of error for our review.

**MCNAMARAS' ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN GRANTING APPELLEE, CITY OF MARION'S, MOTION FOR SUMMARY JUDGMENT BECAUSE OHIO'S SUBDIVISION IMMUNITY STATUTE [R.C. 2744.02(A)(1)] DID NOT GRANT THE CITY OF MARION IMMUNITY FROM LIABILITY BECAUSE ONE OF THE STATUTORY EXCEPTIONS APPLIED, R.C. 2744.02(B)(3).**

{¶16} Marion also filed an assignment of error pursuant to R.C. 2505.22 in the event that we choose to reverse on the immunity issue raised by the McNamras. Should that be the case, Marion asserts the following assignment of error for our review.

**THE CITY'S ASSIGNMENT OF ERROR**
**AN EIGHT FOOT ORANGE WOODEN BEAM LAYING ACROSS A GRAY ROADWAY IN BROAD DAYLIGHT IS, AS A MATTER OF LAW, AN OPEN AND OBVIOIUS HAZARD.**

**{¶17}** Due to the nature of the disposition, both assignments of error will be addressed together.

*McNamaras' Assignment of Error and the*
*City of Marion's Assignment of Error*

**{¶18}** In the McNamaras' assignment of error, the McNamaras argue that the trial court erred in granting summary judgment in favor of Marion. Specifically, the McNamaras argue that Marion was not entitled to immunity pursuant to R.C. 2744.02(A)(1) because an exception to immunity applied under R.C. 2744.02(B)(3). According to the McNamaras, an exception applies under the immunity statute for Marion's negligent failure to remove "obstructions" from a city street.

**{¶19}** Initially, we note that an appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley–Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (6th Dist.1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *see Horton*

*v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus.

{¶20} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

{¶21} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.

> **First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions are not liable in damages for the [loss to person or property,] personal injuries or death of a person. R.C. 2744.02(A)(1) provides:**
>
> **"For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision \* \* \* in connection with a governmental or proprietary function." \* \* \***

**The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in former R.C. 2744.02(B). \* \* \* Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply. \* \* \***

**Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies."**

*Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶¶ 10-12, quoting *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998).

{¶22} The parties do not dispute that Marion is a political subdivision within the meaning of the statute. However the McNamaras argue that the exception set forth in R.C. 2744.02(B)(3) precludes Marion from raising immunity as a defense in this case. Specifically, this exception provides that

**(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:**

**\* \* \***

**(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to liability, when a bridge within a municipal corporation is**

**involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.**

R.C. 2744.02(B)(3). The McNamaras contend that Marion was negligent in failing to remove an "obstruction" pursuant to the statutory exception, and therefore Marion should not have been granted immunity.

{¶23} In *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, the Ohio Supreme Court analyzed the statutory exception to immunity at issue in this case, R.C. 2744.02(B)(3). In *Howard*, the Court first analyzed the legislative history of R.C. 2744.02(B)(3), and ultimately found that the legislature changed the language of the statute to language that further restricted the liability of political subdivisions. The Court's opinion in *Howard* stated the following:

> **The current version of R.C. 2744.02(B)(3) was amended in part by Senate Bill 106 ("S.B. 106"), effective April 2003. Prior to that date, R.C. 2744.02(B)(3) read, "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, *and free from nuisance * * *.*" (Emphasis added.) See 149 Ohio Laws, Part II, 3500, 3508.**
>
> * * *
>
> **We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways.**

*Howard*, ¶¶ 24, 26.  The newer version of the statute removed the "free from nuisance" language cited in *Howard* and replaced it with the language "negligent failure to remove obstructions from public roads."  R.C. 2744.02(B)(3).

**{¶24}** After the Court in *Howard* determined that the Ohio Legislature intended to further limit political subdivision liability for roadways, the Court analyzed what the Ohio Legislature meant by the word "obstruction" in the new statute.  The Court noted that "obstruction" was not defined in the Revised Code, so the Court defined "obstruction."  In *Howard*, the Court "conclude[d] that for the purposes of R.C. 2744.02(B)(3), an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so."  *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, ¶ 30.

**{¶25}** The principle issue before us is whether the beam struck by Michael was an "obstruction" within the meaning of R.C. 2744.02(B)(3).  The record before this court establishes that the beam was three to four inches high and roughly eight feet in length.  (Greg DuBois Aff. Doc. 40).  The beam is a crossbar for one of Marion's traffic-control barricades.  The barricade that the beam was part of was disassembled with the two A-shaped sawhorse legs lying nearby in the grass.  Only the beam itself was in the road.  The pictures provided in the record illustrate that the beam was present across approximately one-third of the roadway

in question, a fact that the McNamaras concede in their brief to this court.[4] *See also* (Joshua Harris Aff. Doc. 40) for photographs illustrating the available roadway.

{¶26} As the photographs in the record illustrate, the beam in question did not "block" or "clog" the roadway as traffic could easily navigate around the beam and traffic had ample space to maneuver. While the beam may hinder or impede a traveler's ability to use the entire roadway, it does not block or clog the roadway in such a manner as to fall under the definition of obstruction provided in *Howard*. Based upon the definition of "obstruction" in *Howard* we find that this beam may "hinder" or "impede" but it does not "block" or "clog" the roadway. Furthermore, as the Ohio Supreme Court suggests in *Howard* that the legislature intended to limit political subdivisions' liability for injuries on the roadway, we find that summary judgment was properly awarded to Marion.

{¶27} We note that the McNamaras cited multiple cases from other District Courts interpreting the *Howard* decision's definition of obstruction. *See Crabtree v. Cook*, 10th Dist. No. 10AP-343, 2011-Ohio-5612; *Widen v. County of Pike*, 4th Dist. No. 09CA794, 2010-Ohio-2169; *Ohio Edison Co. v. Wilkes*, 7th Dist. No. 10MA174, 2012-Ohio-2718. The trial court found the *Crabtree* decision readily distinguishable, and we do as well. The *Crabtree* case dealt with multiple

---

[4] While the McNamaras concede that the beam only took up one-third of the roadway, they argue that the beam covered the entire lane of travel for bicycles. *See* Appt. Br. at 6.

potential obstructions (potholes, caked mud, overhanging vegetation) in the *only* lane of travel. *Crabtree* at ¶¶ 10-12. Clearly that is not the case here. We find the other cases cited by the McNamaras are even more readily distinguishable than *Crabtree* or are unpersuasive to our holding. Accordingly, the McNamaras' assignment of error is overruled.

{¶28} As we have not reversed the case based on the McNamaras' assignment of error, Marion's assignment of error is rendered moot and is therefore overruled.

{¶29} For the foregoing reasons the judgment of the Marion County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**