[Cite as *Green v. Columbus*, 2016-Ohio-826.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Andrea Green, | : | |
| Plaintiff-Appellant, | : | No. 15AP-602 |
| | | (C.P.C. No. 13CV-10737) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 3, 2016

**On brief:** *Hollern & Associates*, and *Edwin J. Hollern*, for appellant. **Argued:** *Edwin J. Hollern*.

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Andrew D.M. Miller*, for appellee. **Argued:** *Andrew D.M. Miller*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Andrea Green, appeals from a judgment of the Franklin County Court of Common Pleas, in favor of defendant-appellee, City of Columbus. For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} On or about 7:05 p.m. on August 10, 2012, Lashonda Jamar was operating a vehicle westbound on Woodward Avenue, just east of the intersection of Brentnell Avenue and Woodward in the city of Columbus. Appellant was a passenger in the vehicle. At the same time, Bryan Fitzgerald was operating his vehicle northbound on Brentnell just south of the same intersection. The two vehicles collided after they entered the intersection at the same time. Jamar was thrown from the vehicle, and died four months after the

accident.[1]  Jamar never provided a statement regarding the accident.  Appellant was also thrown from the vehicle and sustained serious personal injuries.  She has no recollection of the accident. In his affidavit, Fitzgerald avers the following: "At the time of the accident, I had a green light to enter the Woodward-Brentnell intersection.  I specifically remember having a green [light] at the time of the accident."  (Fitzgerald Affidavit, ¶ 10-11.)

{¶ 3}  The events leading up to the accident are largely undisputed.  Brentnell is a two-lane through street running north and south.  Woodward is a two-lane side street running east and west.  At the time of the accident, the city regulated traffic at the intersection of Brentnell and Woodward by a system of eight traffic control signals.  Two signal heads containing the standard red, green, and yellow lights were suspended above the roadway on cables at each of the four approaches to the intersection.  Thus, a motorist approaching the intersection from any direction would see two signal heads displaying the same color signal.  However, on August 10, 2012, several mature trees stood along both sides of Woodward, east of the intersection, and some of the branches obstructed one of the signal heads.

{¶ 4}  On September 26, 2013, appellant filed a complaint against the city alleging that the city was negligent in failing to trim tree branches obstructing the traffic signal at the intersection of Woodward and Brentnell and that the city's negligence was a proximate cause of her injury.  Appellant theorizes that the tree branches obstructed Jamar's view of the signal heads and the setting sun shining in her eyes prevented Jamar from seeing the traffic signal until it was too late to stop the vehicle.

{¶ 5}  On January 16, 2015, the city filed a motion for summary judgment claiming that it was immune from liability to appellant, as a matter of law, under the Political Subdivision Tort Liability Act.  In support of the motion, the city submitted the affidavit of Ronald Brinley who opined that, given the electronic conflict monitors in the control box, it was "virtually impossible for the lights at the intersection to be signaling green for both northbound Brentnell traffic and westbound Woodward traffic."  (Brinley Affidavit, ¶ 32.)  The city also presented the affidavit of David Cornute, Jr., a detective with the Columbus Division of Police.  Cornute arrived at the accident scene "at least an hour and a half after the accident itself."  (Cornute Affidavit, ¶ 59.)  Cornute's examination

---

[1] On February 20, 2015, the administrator of Jamar's estate dismissed his wrongful death action against the city, without prejudice, by filing a notice of voluntary dismissal.

of the roadway at that time "revealed no signs, marks, or indications that either vehicle had made any attempt to stop prior to the accident or to otherwise avoid the impact." (Cornute Affidavit, ¶ 41.)   In his affidavit, Cornute noted: "It is my understanding that Fitzgerald has consistently stated that he had entered the intersection with a green light, and I am not aware of any evidence or statements that would contradict Fitzgerald's claim." (Cornute Affidavit, ¶ 47.)   With regard to the overhanging tree branches he observed at the scene, Cornute made the following statements:

> 60. Because the sun was setting in the western sky when I arrived at the scene, I assumed the sun had been shining in the west at the time of the accident itself.
>
> 61. At the time of the accident, there had been mature trees growing along both sides of Woodward, east of the intersection, and the branches of these trees hung over the roadway.
> 62. I believe sunlight, either alone or coming through the foliage described above, may have hindered Jamar's vision of the traffic light as she approached the intersection.
>
> 63. I do not know that sunlight, either alone or coming through the foliage described above, actually hindered Jamar's vision of the traffic light as she approached the intersection.
>
> 64. As part of my investigation, I revisited the scene about a week after the accident.
>
> 65. I revisited the scene so that [I] could observe the sunlight and the foliage at the same time of day as the accident and after function to the traffic lights had been restored.
>
> 66. Filed with this affidavit as Cornute Exhibit J is a photo that I took during my second visit to the scene.
>
> * * *
>
> 69. The photo * * * shows that, at approximately 7:05 p.m. on or about August 17 [sic], 2012:
>
> a. A westbound Woodward driver heading toward the intersection would have had an unobstructed view of both of the traffic signal lights at the intersection from a distance of at least 250 feet;

b. While overhanging branches may have been starting to encroach upon a westbound Woodward driver's view of the left traffic signal light from a distance of at least 250 feet away, his or her view of even that left signal face is not obstructed at that distance;

c. A westbound Woodward driver's view of the right traffic signal light (or face) for the intersection is completely unobstructed from a distance of at least 250 feet[.]

(Cornute Affidavit.)

{¶ 6} With regard to the relative stopping distances, Cornute opined as follows:

Based on the conditions of the roadway at the time of the accident, the posted speed limit, and various common calculations applied in the field of accident reconstruction, I believe that,

a. If Jamar had been traveling at a speed of 23-35 miles per hour when she first saw—or first could have seen—any sort of stop indication from either signal face, and if she was at least 250 feet from the intersection's stop bar when she first saw— or first could have seen—that stop indication, Jamar had sufficient time to safely bring her vehicle to a stop before proceeding into the intersection.

(Cornute Affidavit, ¶ 74.)

{¶ 7} In opposition to the motion for summary judgment, appellant submitted the deposition testimony of Jack P. Holland, a retired Ohio State Highway Patrolmen, who is an expert in the field of traffic accident reconstruction. Holland took measurements and photographs of the approaches to the intersection from various distances. According to Holland, because of the overhanging tree branches, both signal heads are not continually visible to a motorist approaching the intersection on westbound Woodward until the vehicle is 123 feet from the east edge. As to the cause of the accident, Holland opined "[t]hat the traffic signal was obscured by trees and that the highway was not in good repair * * * because the traffic signal was obscured." (Holland Depo. 33.) He also believed that, because tree branches obscured the traffic signals, a warning sign "would have been very, very beneficial." (Holland Depo. 67.)

{¶ 8} Appellant also presented the deposition testimony of Professional Engineer William Jackman. Jackman acknowledged that the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") does not mandate the overhead traffic signals that the city

installed at the intersection in question.[2]  However, he opined that section 4D.15 of OMUTCD requires two signal faces to be continually visible to traffic approaching the intersection on westbound Woodward for a minimum of 215 feet at the posted speed limit of 25 m.p.h.  After reviewing the traffic crash report, photographs of the scene, Cornute's investigative summary, and measurements taken by Holland, Jackman testified that, due to the overhanging tree branches, two signal faces are not visible to a motorist approaching the intersection on westbound Woodward until the motorist is 123 feet from the near edge of the intersection.  In his expert opinion, given the lack of adequate sight distance for traffic approaching the intersection on westbound Woodward, OMUTCD required the city to erect a "Signal Ahead" sign as a warning to approaching traffic.

{¶ 9}  On May 29, 2015, the trial court granted the city's motion for summary judgment and entered judgment in favor of the city.  The trial court held that even if the city was negligent both in failing to trim tree branches obstructing the traffic signals and in failing to erect a warning sign, the city was immune from liability because traffic control devices are not considered part of the "public roads" unless they are mandated by OMUTCD.[3]  In so holding, the trial court relied on the prior decision of this court in *Walters v. Columbus*, 10th Dist. No. 07AP-917, 2008-Ohio-4258.

{¶ 10} On June 22, 2015, appellant filed a timely notice of appeal to this court.

## II. Assignment of Error

{¶ 11} Appellant sets forth a single assignment of error:

> THE TRIAL COURT ERRED BY GRANTING DEFENDANT/-
> APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

## III. Standard of Review

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Accordingly, summary judgment is appropriate

---

[2] Andrew D.M. Miller, city of Columbus assistant city attorney, attached authenticated copies of the relevant OMUTCD sections as exhibits to his affidavit.

[3] Because the trial court ruled that the city was immune from liability to appellant, as a matter of law, the trial court did not consider the city's argument that it lacked notice that the tree branches obstructed the signal heads.

only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 6, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 13} " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " *Id.* at ¶ 7, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Id.*, citing *Dresher* at 293.

{¶ 14} Appellate review of summary judgment is de novo. *Id.* at ¶ 5. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review without deference to the trial court's determination. *Id.*, citing *Maust v. Bank One Columbus, N.A*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown v. Scioto Cty. Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

## IV. Legal Analysis

{¶ 15} The trial court ruled that the city could not be held liable to appellant because there was no dispute that the alleged negligence of the city arose out of the performance or nonperformance of a governmental function and because the exception to immunity set out in R.C. 2744.02(B)(3) did not apply.

{¶ 16} R.C. 2744.01(C)(2) defines the term "governmental function" in relevant part, as follows:

> (e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, * * * and public grounds[.]
>
> * * *
>
> (j) The regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices[.]

{¶ 17} "R.C. Chapter 2744 addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions." *Gibbs v. Columbus Metro. Hous. Auth.*, 10th Dist. No. 11AP-711, 2012-Ohio-2271, ¶ 8, citing *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. The statutory framework requires courts to employ a three-tier analysis to determine whether a political subdivision is entitled to immunity under R.C. 2744.02. *Id.*, citing *Smith v McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 13; *Lambert* at ¶ 8. "The analysis begins with a general grant of immunity that affords the political subdivision protection from liability 'in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' " *Gibbs* at ¶ 8, quoting R.C. 2744.02(A)(1). "However, the immunity provided by R.C. 2744.02(A)(1) is not absolute, but is subject to various exceptions set forth in R.C. 2744.02(B)." *Smith v. Martin*, 176 Ohio App.3d 567, 2008-Ohio-2978, ¶ 11 (10th Dist.). Consequently, "[t]he second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose a political subdivision to liability." *Gibbs* at ¶ 8, citing *Smith*, 2011-Ohio-4674, at ¶ 14; *Lambert* at ¶ 9. If any of the R.C. 2744.02(B) exceptions apply, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity. *Gibbs* at ¶ 8, citing *Smith*, 2011-Ohio-4674, at ¶ 15; *Lambert* at ¶ 9.

{¶ 18} Under the Political Subdivision Tort Liability Act, immunity is an affirmative defense. *Slane v. Hilliard*, 10th Dist. No. 15AP-493, 2016-Ohio-306, ¶ 30, citing *Jones v. Lucas Metro. Hous. Auth.,* 6th Dist. No. L-96-212 (Aug. 29, 1997); *Haynes v. Franklin*, 135 Ohio App.3d 82 (12th Dist.1999). Accordingly, the burden of proof is on the political subdivision to establish general immunity. *Id. See also Browning v. Fostoria*, 3d Dist. No. 13-09-28, 2010-Ohio-2163, ¶ 18; *Horen v. Bd. of Edn. of Toledo Pub. Schools*, 6th Dist. No. L-09-1143, 2010-Ohio-3631, ¶ 33. The parties agree that the city is entitled to general immunity under R.C. 2744.02(A) inasmuch as both the maintenance and repair of public roads and the erection or nonerection of traffic signals are governmental functions under R.C. 2744.01(C)(2)(e) and (f) respectively.

{¶ 19} When a political subdivision establishes general immunity, the burden then shifts to the plaintiff to demonstrate that one of the exceptions to immunity applies. *Id.*

*See also Maggio v. Warren*, 11th Dist. No. 2006-T-0028, 2006-Ohio-6880, ¶ 38; *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460, ¶ 24 (3d Dist.). R.C. 2744.02(B) sets forth the exceptions to general immunity in relevant part, as follows:

> Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> * * *
>
> (3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their *negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads* * * *.

(Emphasis added.)

{¶ 20} In *Franks v. Lopez*, 69 Ohio St.3d 345 (1994), the Supreme Court of Ohio applied former R.C. 2744.02(B)(3), under similar facts to those presented herein. Prior to the 2003 amendments, R.C. 2744.02(B)(3) provided that "political subdivisions are liable for injury caused 'by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance.' " *Id.* at 347, quoting former R.C. 2744.02(B)(3). The court held that the failure of a township to maintain a traffic sign may constitute an actionable nuisance claim within the exception. *Id.* at 348. In so holding, the court stated:

> Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so.

*Id.* at 349.

{¶ 21} Subsequent to *Franks*, the General Assembly amended R.C. Chapter 2744. The 2003 amendments added a definition of the term "public roads," which is now found in R.C. 2744.01(H). Pursuant to R.C. 2744.01(H): " '[p]ublic roads' means public roads,

highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices *unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices*." (Emphasis added.) Additionally, the 2003 amendments removed the nuisance language from R.C. 2744.02(B)(3) and replaced it with the current "obstruction" language. *Walters* at ¶ 17.

{¶ 22} In *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, the Supreme Court specified that "the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id.* at ¶ 26. The Supreme Court continued:

> Given the General Assembly's prior inclusion of the same language in Am.Sub.H.B. No. 350, our precedent that broadly defines the term "nuisance," and that S.B. 106 also limited the definition of "public roads" from a more expansive reading that included "berms, shoulders, rights-of-way, or traffic control devices" to one that focused solely on the roadway itself, * * * we discern a legislative intent to limit political-subdivision liability for roadway injuries and deaths. The General Assembly, in furtherance of its goal, used the word "obstructions" in a deliberate effort to impose a condition more demanding than a showing of a "nuisance" in order for a plaintiff to establish an exception to immunity.

*Id.* at ¶ 29.

{¶ 23} In *Walters*, this court had the opportunity to apply the amended statute under similar facts to those presented herein. In *Walters*, the plaintiff failed to obey a posted stop sign at the intersection of two city streets and his vehicle collided with another. The plaintiff filed a complaint against the city alleging the city was negligent in failing to remove overhanging tree branches that obstructed the sign from view. The city moved for summary judgment, arguing that it was immune from liability pursuant to R.C. Chapter 2744. The plaintiff argued that the exception to immunity found in R.C. 2744.03(B)(3) applied. The trial court denied the city's motion and the city appealed.

{¶ 24} This court reversed the judgment of the trial court and held that the city was immune from liability to the plaintiff, as a matter of law, because the stop sign in question was not part of the "public roads" for purposes of R.C. 2744.02(B)(3). In so holding, this court noted the 2003 amendments to R.C. Chapter 2744 explicitly excluded "traffic

control devices" from the definition of "public roads" unless the particular traffic control device was mandated by OMUTCD. *Id.* at ¶ 20. This court identified the dispositive issue as follows:

> [T]he critical inquiry before this court is whether or not the stop sign at issue was mandated by [OMUTCD]. If the stop sign was so mandated, then appellant is not entitled to immunity. If, however, it was not, then statutory immunity applies and appellant has no liability here.

*Id.* at ¶ 12.

{¶ 25} Because the stop sign at issue in *Walters* was not mandated by OMUTCD, this court concluded that R.C. 2744.02(B)(3) did not apply and the city was immune from liability to the plaintiff, as a matter of law, for any negligence in failing to remove the overhanging tree branches that obstructed the plaintiff's view of the sign. *Id.* at ¶ 23. Applying the rationale of this court's prior decision in *Walters* to the undisputed facts of this case requires the same result.

{¶ 26} Appellant concedes that OMUTCD does not mandate the traffic signals in place at the intersection on August 10, 2012. Consequently, the traffic signals in question are not part of the "public roads" as R.C. 2744.01(H) defines the term. Because the traffic signals in question are not part of the public roads, the exception to immunity found in R.C. 2744.02(B)(3) does not apply. *Walters.* Even if we accept appellant's contention that the city was negligent in failing to trim the tree branches that obstructed Jamar's view of the signal heads, the city is immune from liability to appellant under R.C. 2744.02(A) as a matter of law.

{¶ 27} Nonetheless, appellant claims that overhanging foliage can be considered an "obstruction" to the public roads for purposes of R.C. 2744.02(B)(3) even though the traffic signals are not considered part of the public roads. In our view, the decision of the Supreme Court in *Howard* forecloses appellant's obstruction claim under these facts. In *Howard*, the Supreme Court determined that, for purposes of R.C. 2744.02(B)(3), "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 30.

{¶ 28} Appellant claims, however, that the decision of this court in *Crabtree v. Cook*, 196 Ohio App.3d 546, 2011-Ohio-5612, ¶ 26 (10th Dist.), supports the argument

that the tree limbs obstructing overhead traffic signals can be considered an obstruction to the public roads under the current version of R.C. 2744.02(B)(3).  Here, the trial court found that *Walters* controlled the outcome of this case and that *Crabtree* is distinguishable. We agree.

{¶ 29} In *Crabtree*, a vehicle struck the plaintiff as he was riding his bicycle.  The plaintiff had swerved from the right side of the eastbound lane into the middle of the lane to avoid a huge pothole, but he was unable to move back quickly because of additional potholes, mud, pieces of rock, and bushes in the berm.  In reversing summary judgment in favor of the city, this court held that the negligent conduct of the city in permitting such conditions to exist in the only lane of travel "might constitute obstructions for purposes of [a] bicyclist." *Id.* at ¶ 26.

{¶ 30} This case does not involve a cyclist nor is there any evidence that the tree limbs obstructing the overhead traffic signals at the intersection "block[ed] or clog[ged] the roadway." *Howard* at ¶ 30.  Unlike the potholes in *Crabtree*, the tree branches in this case were a purely visual obstruction. *Crabtree* involved surface conditions on or near the roadway and the case is, therefore, distinguishable on its facts.  *See, e.g.*, *Repasky v. Gross,* 10th Dist. No. 12AP-752, 2013-Ohio-2516, ¶ 15, distinguishing *Crabtree* (A cut in the road did not constitute an obstruction of the public road under R.C. 2744.02(B)(3) because it did not block or clog the road for the bicyclist, even if the condition constituted a potential hazard.); *McNamara v. Marion Popcorn Festival, Inc.*, 3d Dist. No. 9-12-34, 2012-Ohio-5578, ¶ 25-26, distinguishing *Crabtree* (crossbar of a disassembled traffic-control barricade that extended across one-third of the roadway was not an obstruction under *Howard* because it merely hindered or impeded traffic).  Because the tree branches obstructing the overhead traffic signals at the intersection in question did not block or clog the roadway, they cannot be considered as obstructions under R.C. 2744.02(B)(3). *Howard*; *Walters*.  Thus, even if the city was negligent in failing to remove the tree branches, the exception to immunity found in R.C. 2744.02(B)(3) does not apply and the city is immune from liability, as a matter of law, for any negligence in failing to trim the branches obstructing Jamar's view of the signal heads.

{¶ 31} Appellant argues, in the alternative, that the city may yet be liable to appellant for its negligent failure to erect a sign warning motorists of the "Signal Ahead." Appellant's theory of liability is predicated on Jackman's testimony that OMUTCD

mandates a warning sign on Woodward because two signal faces are not continuously visible to approaching traffic from a distance of 250 feet. The city has argued that Jackman's opinion is not reliable because it is based on photographs taken by Holland at a different intersection about 500 feet away, and because Holland's measurements of the sight distances are not accurate. In ruling on a motion for summary judgment, however, courts may not weigh the evidence or consider the credibility of witnesses. *Nationwide Mut. Ins. Co. v. Am. Elec. Power*, 10th Dist. No. 08AP-339, 2008-Ohio-5618, ¶ 29, citing *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656 (10th Dist.). In the context of the summary judgment standard, we find there is an issue of fact as to whether the traffic signals at the intersection in question are visible to a motorist approaching the intersection westbound on Woodward from a distance of 215 feet. The question is whether this factual issue is material.

{¶ 32} Even if we accept appellant's claim that, under the conditions that existed at the intersection on the date of the accident, OMUTCD required a "Signal Ahead" sign on Woodward, the nonerection of a traffic signal is a governmental function for which the city is generally immune from liability. *See* R.C. 2744.01(C)(2)(f) and 2744.02(A)(2). Thus, the burden is on appellant to demonstrate that one of the exceptions to immunity applies. *Slane*. Appellant argues that, because the warning sign in question is mandated by OMUTCD, the exception set forth in R.C. 2744.02(B)(3) applies. We disagree.

{¶ 33} In discussing the impact of the 2003 amendments to R.C. Chapter 2744, this court, in *Walters* at ¶ 20, concluded: "By its clear language, it is evident that the General Assembly did not intend all erected traffic control devices to be considered part of a public road." This court further noted that "the General Assembly purposely replaced the phrase 'free from nuisance' in light of judicial decisions interpreting the term 'nuisance' broadly." *Id.* at ¶ 19, citing *Howard*.

{¶ 34} Ohio courts applying the prior version of R.C. Chapter 2744 have held that political subdivisions are immune from liability for the nonerection of traffic control devices, even where OMUTCD mandates the installation of the particular traffic control device. *See Franks* at 351 ("as a matter of law, * * * the failure to erect proper signage [does] not constitute a nuisance within the meaning of [R.C.] 2744.02(B)(3)"); *Jones v. Franklin,* 102 Ohio App.3d 114, 118 (12th Dist.1995) ("Pursuant to R.C. 2744.01 and 2744.02, appellee is immune from liability for failing to erect a traffic control device, even

where [O]MUTCD mandates installation of the particular traffic control device."); *Feitshans v. Darke Cty.*, 116 Ohio App.3d 14, 28 (2d Dist.1996) (the county's decision not to erect a temporary high water sign is a governmental function for which the city is entitled to immunity and the nuisance exception set forth in R.C. 2744.02(B)(3) does not apply); *Progressive Ins. Co. v. Tuscarawas Cty.*, 5th Dist. No. 95AP030021 (Dec. 19, 1995) (county is immune from liability for injury caused by its negligent failure to erect a warning sign on the bridge, even if OMUTCD mandated installation of a particular sign).

{¶ 35} In seeking to impose liability on the city for the nonerection of the "Signal Ahead" sign, appellant asks this court to expand the scope of political subdivision liability beyond that permitted under prior law even though the Supreme Court has explicitly instructed that the 2003 amendments to R.C. Chapter 2744 were intended to limit such liability. Based on our interpretation of the 2003 amendments, and given the case law cited above, we believe the General Assembly intended to foreclose any such liability when it removed the nuisance language from R.C. 2744.02(B)(3) and added the definition of "public roads" now found in R.C. 2744.01(H). Accordingly, we hold that the exception to immunity under R.C. 2744.02(B)(3) does not apply to any negligent conduct of the city in failing to erect a "Signal Ahead" sign at the intersection.

{¶ 36} For similar reasons, we decline appellant's invitation to adopt the "entire road system" theory of political subdivision liability. Under appellant's theory, the existence of obstructions and defects off the roadway may be considered by the court in determining whether a political subdivision has been negligent in failing to keep its public roads "in repair." Though such a theory may arguably represent a reasonable construction and extension of the law prior to the 2003 amendments, appellant's theory is antithetical to the plain language employed by the General Assembly in amending R.C. Chapter 2744. *Howard* at ¶ 29 (The 2003 amendments "limited the definition of 'public roads' from a more expansive reading that included 'berms, shoulders, rights-of-way, or traffic control devices' to one that focused solely on the roadway itself."); *Laurie v. Cleveland*, 8th Dist. No. 91665, 2009-Ohio-869 (though the city's negligent failure to trim overhanging tree branches that create a purely visual obstruction of the roadway might have been actionable as a nuisance under the prior law, the city is immune from liability under the recent amendment to R.C. 2744.02(B)(3)). *See also Bibler v. Stevenson*, 3d Dist. No. 5-14-29, 2015-Ohio-3717; *Darby v. Cincinnati*, 1st Dist. No. C-130430, 2014-Ohio-2426, ¶

19; *Rastaedt v. Youngstown*, 7th Dist. No. 12 MA 82, 2013-Ohio-750, ¶ 25; *Shope v. Portsmouth*, 4th Dist. No. 11CA3459, 2012-Ohio-1605, ¶ 29; *Hale v. CSX Transp.*, 2d Dist. No. 22546, 2008-Ohio-5644. Accordingly, we hold that the exception to immunity under R.C. 2744.02(B)(3) does not contemplate appellant's "entire road system" theory of liability. We believe that the General Assembly intended to foreclose any such liability when it removed the "nuisance" language from R.C. 2744.02(B)(3) and added the definition of "public roads" now found in R.C. 2744.01(H).

{¶ 37} For the foregoing reasons, we hold that the trial court did not err when it granted the city's motion for summary judgment. Accordingly, appellant's sole assignment of error is overruled.

## V. Conclusion

{¶ 38} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

―――――――――――――――――